MILES SAVINGS BANK, APPELLANT, *v.* LIQUIN & SWANDAL, RESPONDENT.

(No. 6,809.)

(Submitted September 29, 1931.   Decided October 29, 1931.)

[4 Pac. (2d) 482.]

Mr. *James O'Connor* and Messrs. *Gibson & Smith,* for Appellant, submitted a brief; Mr. *O'Connor* and Mr. *Fred L. Gibson* argued the cause orally.

*Messrs. Stewart & Brown,* for Respondent, submitted a brief; *Mr. John G. Brown* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action brought on a promissory note dated December 1, 1923, in the sum of $2,954.90, alleged to have been made by defendant corporation and payable to F. B. Hemingway, father-in-law of C. K. Liquin, and by Hemingway transferred to plaintiff after maturity.

The note was signed as follows: "Liquin & Swandal, Inc., by C. K. Liquin, President. Attest, Austin Swandal, Secretary." The note contains the indorsement of C. K. Liquin and Austin Swandal, and, when the action was commenced, they were made parties defendant. When the trial began, the action was dismissed as to defendants C. K. Liquin and Austin Swandal, and the trial proceeded against defendant corporation alone.

The defense asserted in the answer was that the note was not executed by defendant, that the signature of Austin Swandal was a forgery, and that defendant received no consideration for the note. The reply put in issue the affirmative allegations of the answer.

At the trial plaintiff introduced proof that C. K. Liquin was authorized at a meeting of the board of directors to execute the note sued upon. It made out a prima facie case in all respects, and then offered proof that it was the custom and practice for either the president, secretary, or vice-president of the defendant, acting alone, to execute notes for defendant without any written authorization of the directors. A number of notes thus executed were introduced in evidence. On the cross-examination of C. K. Liquin it was shown that these notes were entered on the books of the defendant. It was also developed that the loan represented by the note was originally made in December, 1919, for $2,000, and that the note sued upon was a renewal note with accrued interest added; that defendant was indebted to the Banking Corporation of Montana, when it failed in 1923; that thereafter Claude C. Gray, who was receiver of the Banking Corporation, became

an officer of the defendant, and required, and was furnished, a financial statement from defendant which was signed and sworn to by the witness C. K. Liquin, which purported to set out all of the liabilities of the defendant, but which made no reference to the note here sued upon. This statement was introduced in evidence for the sole purpose of impeachment, and the jury was so advised. The minute-book of defendant was offered in evidence, but, on objection by plaintiff, was excluded. Certain pages of the minute-book were then offered and received in evidence, together with certain sections of the by-laws which were contained in the minute-book, and the jury was instructed to consider them only as they bore upon the question of the custom of defendant in permitting notes to˙ be executed by officers of the corporation without previous authority from the board of directors.

Swandal, testifying for defendant, said he did not sign or indorse the note, and that there was no directors' or stockholders' meeting authorizing its issuance; that neither he nor the corporation ever received any money from Hemingway or plaintiff; that he, C. K. and W. K. Liquin were the sole stockholders of the corporation until 1927, when "he bought out Mr. Liquin." Defendant offered in evidence the books of the defendant, consisting of a ledger and two journals for the purpose of showing that they contained no entry of the note sued upon, but on plaintiff's objection the books were excluded.

In rebuttal, Mr. Liquin testified that the books did contain an entry relating to the note. He said the entry was found on page 2 of the journal, which entry was introduced in evidence, and was as follows: "Date Jan. 24, 1920, Name Liquin Bros., Description Bills pay. note General Ledger Cr. $2,000 page No. 28; Liquin Bros., Dr. $2,000." He said he made the entry himself; that the money was obtained from F. B. Hemingway for the company, and went through Liquin Bros. account instead of a new account being opened. There was a corresponding entry on page 28 of the· ledger, which entry was introduced in evidence. On cross-examination he said:

"I do not find the name of Hemingway or Miles Savings Bank in those books anywhere. It is not in any of those books."

The jury, by a vote of ten to two, returned a verdict for defendant. Plaintiff filed a motion for a new trial. The Honorable Benjamin E. Berg, presiding judge at the trial, was disqualified, and the Honorable B. B. Law was called in to hear the motion. The court denied the motion, and plaintiff appealed.

In support of the motion, plaintiff filed an affidavit of John G. McPherson, the acting bailiff during the trial, who stated that, while the jury was deliberating, he was requested by some of the jurors, to bring to the jury-room the four books of the defendant corporation—the minute-book, the ledger, and two journals—and he did so, that the books were in the jury-room approximately one-half hour, and that he did not know what use was made of the books. It also filed the affidavit of W. G. Smith, one of the dissenting jurors, who stated that all of the jurors examined and looked through the books.

Defendant, in opposition to the showing made by plaintiff on the motion, filed affidavits of eight jurors in which each asserted that a question of interest to the jurors was the date of the two book entries which had been admitted in evidence; that, when the books were brought into the jury-room, they were not examined, except at the page where the two items admitted in evidence were written.

The first contention made by plaintiff is that the verdict is contrary to the law and the evidence. In brief, its counsel contend that, since the note in question was signed by C. K. Liquin as president of the defendant corporation, and since the evidence shows without dispute that it was customary for the president to sign notes on behalf of the defendant, it becomes immaterial whether the name of Swandal was a forgery. Thus premising their argument, it is urged that the court erred in entering judgment on the verdict.

Were it not for the pleading and proof of a lack of consideration for the note, there would be merit in counsel's contention. (*Mayger* v. *St. Louis Min. & Mill. Co.*, 68 Mont. 492,

219 Pac. 1102.) Here there was pleading and proof of a total want of consideration for the note. The action was to all intents and purposes between the immediate parties to the note, plaintiff having taken it after maturity, and hence, though the president, by reason of the custom pursued, may have had authority to execute notes on behalf of the corporation, it was still a question for the jury to determine whether the note was without consideration so far as the corporation was concerned.

It is next urged that the court erred in denying plaintiff's motion for a new trial because of the fact that the books of the defendant which had been excluded as evidence were permitted to go to the jury-room during the time the jurors were deliberating upon the verdict to be returned. Plaintiff contends that the affidavits of the jurors cannot be resorted to for the purpose of ascertaining whether they read or considered the books in arriving at their verdict, and that, as stated in 20 R. C. L. 259, it must be presumed that they did read them in whole or in part.

In the view we take of this question, it is unnecessary in this case to determine whether affidavits of the jurors may be considered to sustain their verdict, or, to be exact, whether their affidavits may be resorted to for the purpose of determining whether they read the books irregularly brought to the jury-room. For the purposes of this case we may assume that the jurors did read parts or all of the books not properly in evidence.

We have carefully examined the books, and find nothing in them, aside from what was regularly introduced in evidence, that could influence them in arriving at a verdict. As above noted, portions of the minute-book that had anything to do with the questions at issue were admitted in evidence. There is nothing in the balance of the book that could possibly be said to prejudice plaintiff or that could have influenced the jury on the questions before it.

The ledger and journals were simply offered by defendant to prove the negative fact that they did not contain the

name of Hemingway or plaintiff as a creditor of defendant. Since plaintiff's own witness had already testified that such was the fact, and since his testimony in that respect was uncontradicted, the books disclosed nothing more than the evidence of plaintiff's witness.

The books show that other notes which were introduced in evidence to show the custom of the defendant in executing notes by the president without previous authorization from the directors were properly entered therein, but, even as to this, plaintiff's witness had so testified without contradiction, and hence the books on this point could not have influenced the jury.

We then have a situation where the only facts which an examination of the books would reveal that had anything to do with the issues in the case, directly or remotely, were either found in such portions of the books as had been introduced in evidence, or otherwise in evidence—testified to by plaintiff's witness—and were not disputed. It follows that the parts of the books not properly before the jury could not in the slightest degree have influenced the jury. They were not sent to the jury-room through the design or connivance of either party, but through mistake of the bailiff in thinking that the jury had a right to see them.

It is fundamental that, if the jury examines documents not in evidence which are of such a nature as to be prejudicial to the unsuccessful party, or calculated to influence the jurors in favor of the prevailing party, a new trial should be granted. (Note in 20 A. L. R. 1202; 45 C. J. 152; *Bates* v. *Preble,* 151 U. S. 149, 38 L. Ed. 106, 14 Sup. Ct. Rep. 277; *Dartnell* v. *Bidwell,* 115 Me. 227, 5 A. L. R. 1320, 98 Atl. 743; *Bouton-Perkins Lbr. Co.* v. *Huston,* 81 Wash. 678, 143 Pac. 146; *Trohey* v. *Chicago etc. Ry. Co.,* 168 Ill. App. 1; *Rodgers* v. *Central Pac. Ry. Co.,* 67 Cal. 607, 8 Pac. 377; *Yanez* v. *San Antonio Traction Co.,* (Tex. Civ. App.) 126 S. W. 1176; 1 Spelling on New Trial & Appellate Practice, sec. 162.)

But it is equally well settled, and it is sound doctrine that the mere fact that documents improperly, but inadvertently,

allowed to go to the jury-room when not introduced as evidence, will not of itself warrant a new trial when they contain nothing of a character likely to prejudice the unsuccessful party, or where the undisputed testimony disclosed the same information that the jurors would gain from an examination of the documents. (16 R. C. L. 302; 20 R. C. L. 259; *State* v. *Wingard*, 160 Wash. 132, 295 Pac. 116, and cases cited; *Stanley* v. *Thomas*, (Iowa) 82 N. W. 325; 1 Hayne on New Trial & Appeal, pp. 318–320.) It was not error to deny the motion for a new trial on this ground.

Plaintiff contends that the court erred in overruling his ■■ objection to the cross-examination of plaintiff's witness C. K. Liquin as to when the loan in question was made, and in permitting the witness to answer "in the winter of 1919." On his direct examination the witness had testified in effect that the note was duly signed and executed by defendant; that it was sent by the witness through the mails to F. B. Hemingway at his postoffice address, Clinton, Iowa. The note was introduced in evidence bearing the date of December 1, 1923. The note recited in effect that its face value represented "value received." The note itself imported consideration (Subds. 21 and 39, sec. 10606, Rev. Codes 1921).

"The right of cross-examination extends not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten the jury upon the question in controversy, and this right should not be restricted unduly." (*State* v. *Howard*, 30 Mont. 518, 77 Pac. 50, 54.)

The court did not err in permitting defendant to show on the cross-examination of Liquin the time when the consideration for the note passed—the time when the value was received as recited in the note. The cross-examination did not seek to establish a want of consideration for the note, as plaintiff's counsel contend, but simply to fix the time when it passed.

Other contentions of the plaintiff have been considered, and we find no reversible error in the record. The judgment is accordingly affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Matthews concur.