No. 91-113

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1992**

THE STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

SHANNON DAVIS, a/k/a SHAWN DAVIS,
a/k/a CLEVE LAYTON VICK,

        Defendant and Appellant.


APPEAL FROM:   District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Larry Moran, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           Marcelle C. Quist, Quist Law Office,
           Bozeman, Montana

       For Respondent:

           Hon. Marc Racicot, Attorney General,
           Joseph E. Thaggard, Assistant Attorney General,
           Helena, Montana; Michael Salvagni, Gallatin
           County Attorney, Martin Lambert, Deputy
           County Attorney, Bozeman, Montana


**FILED**

APR 17 1992

Filed: *Ed Smith*

**CLERK OF SUPREME COURT
STATE OF MONTANA**

Submitted on Briefs:  December 12, **1991**

Decided:  April 17, 1992

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On April **19, 1990,** the State filed an Information in the Eighteenth Judicial District Court in Gallatin County, charging Shannon Davis with Sexual Assault. On August 20, **1990,** the State amended its Information to add one count of Solicitation of Tampering with Physical Evidence. The District Court, sitting without a jury, tried the case on August 28-31, **1990.** The court found Davis guilty on both charges. Davis appeals. We affirm.

The issues are:

1. Did the District Court err when it permitted the placement of an opaque screen between Davis and the witness stand during the testimony of two child witnesses?

2. Did the District Court err when it admitted evidence of pending sexual assault charges in another county?

**3.** Did the District Court err when it allowed the victim's counselor to testify about the victim's statements which were made during the investigation of the case?

**4.** Did the District Court err when it denied Davis' motion for acquittal which was based on the sufficiency of the proof?

In the fall of **1989,** Kathleen Pollard, a kindergarten teacher at Monforton School in Bozeman, contacted the Department of Family Services about her pupil J.R. Ms. Pollard had noticed that J.R., who was then five years old, was dirty, unhealthy, and emotionally underdeveloped. She summoned social worker Gloria Edwards, who interviewed J.R. on September 5, **1989.** Ms. Edwards then sought temporary investigative authority but was unsuccessful.

Consequently, J.R. remained in the care of her biological mother for several more months while Ms. Pollard continued to monitor her appearance and behavior.

On April 4, **1990,** Ms. Pollard summoned Ms. Edwards again. Ms. Pollard told Ms. Edwards that J.R. was much more dirty and unkempt that day than she had been before, and that Ms. Edwards should come and observe for herself. Ms. Edwards interviewed J.R., who said, "I have a babysitter, and his name is Shawn, and he makes [my sister] take long naps, and he looks at my peepee for a long, long time." J.R. repeated this story the next day, and indicated that by "peepee" she meant her vaginal area. When Ms. Pollard asked J.R. what happened next, J.R. said "he just bodied his own and waited for some stuff to come out of his thing." Subsequent interviews by Ms. Edwards and child psychologist Eugenia Bellante made it clear that J.R. was describing sexual activity.

On April 5, **1990,** Ms. Edwards made arrangements to place J.R. in a foster home. The next day Ms. Edwards took J.R. to the Gallatin County Sheriff's Office, where J.R. identified Davis as her babysitter in a photographic lineup. On April **19, 1990,** the State charged Davis with sexually assaulting J.R. The District Court issued a bench warrant for his arrest that same day.

Davis could not provide bond and remained in jail throughout the pretrial preparation of the case. During his incarceration he placed 37 collect telephone calls to his friend John Kubichek. In one of these phone calls in late April **1990,** Davis asked Kubichek to retrieve a parcel from Davis' trailer and destroy it. Kubichek

3

opened the package and found several photographs of a nude female juvenile later identified as L.D.

Kubichek delivered the package and its contents to the Gallatin County Sheriff's Office. At that time, several charges were pending against Davis in Madison County for engaging in sexual activity with L.D. Subsequently, the State amended its Information to add a charge of Solicitation of Tampering with Physical Evidence.

The District Court, sitting without a jury, found Davis guilty on both counts after a trial on August 28-31, 1990. The court sentenced him to 20 years at Montana State Prison for the sexual assault and 10 years for solicitation of tampering. The court designated Davis as a dangerous offender and ordered that he complete the prison's sexual offender treatment program prior to any future release on parole.

**I**

Did the District Court err when it permitted the placement of an opaque screen between Davis and the witness stand during the testimony of two child witnesses?

On August 22, 1990, the State moved the District Court for an order permitting protective screening during the testimony of J.R. and A.C., a second child witness whose testimony would tend to corroborate J.R.'s testimony by showing that Davis followed a common scheme or plan in his sexual contact with children. The court took preliminary evidence on the matter before trial, heard

4

argument by counsel, and then decided to permit placement of the screen.

The District Court asked a newspaper photographer to photograph the screen after it was in position, and the court then appended those photographs to the record. The screen was a free-standing, hinged space partition apparently intended for use as a temporary room divider. As erected, it stood approximately six and one-half feet high and spanned about ten feet across. The screen was located directly in the line of sight from the witness stand to the counsel table at which Davis was seated and was closer to the counsel table than to the witness stand. With the screen in place, the judge, prosecuting attorney, and defense counsel could view the witnesses, but Davis could not. The screen was removed after the second child witness finished testifying.

Davis now contends that the court erred in permitting the use of this screen. He argues that this device violated his right to confront the witnesses against him as guaranteed by the United States and Montana Constitutions. In the court below, however, Davis did not object or argue on the basis of the State Constitution. By failing to object at trial on the basis of the Montana Constitution, Davis waived his right to have us review that issue on appeal. Section 46-20-104(2), MCA. Consequently, we do not express an opinion today on whether the screening procedure violated the Montana Constitution. We turn instead to the United States Constitution and its accompanying case law.

The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Amend. VI, U.S. Const. The United States Supreme Court considered the application of this clause to testimony by child witnesses in two recent cases, *Coy v. Iowa* (1988), 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857, and *Maryland v. Craig* (1990), 497 U.S. ___, 110 S.Ct. 3157, 111 L.Ed.2d 666.

In *Coy*, the State of Iowa charged the defendant with two counts of engaging in lascivious acts with children, a felony under § 709.8, Iowa Code. The trial court permitted the state to erect a translucent screen in front of the defendant. The state legislature had authorized this procedure, § 910A.14, Iowa Code, and the trial court did not undertake any independent inquiry into the necessity for it. Lights were then thrown on the screen in a way that allowed the defendant to see the witnesses without allowing the witnesses to see him. *Coy*, 487 U.S. at 1014-15, 108 S.Ct. at 2799, 101 L.Ed.2d at 863.

The Iowa Supreme Court held that the "trial court had no obligation to make an independent finding of necessity," thereby implying that the legislature's determination of necessity in adopting the statute was sufficient. *State v. Coy* (Iowa 1987), 397 N.W.2d 730, 733. The United States Supreme Court then reversed.

The Court held in a 6-2 decision that the use of the screen at trial violated the defendant's rights under the Confrontation

Clause. Justice Scalia, writing for the majority, said that "the irreducible literal meaning" of the Confrontation Clause is a right to meet the state's witnesses "face to face" at trial. *Coy*, 487 **U.S.** at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. Justice Scalia declined to consider any exception to this "irreducible literal meaning," but he suggested that if such exceptions did exist they would require a greater showing than Iowa's general legislative finding of necessity. *Coy*, 487 U.S. at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867.

Justices O'Connor and Stevens concurred separately in order to emphasize their

> view that those [Confrontation Clause] rights are not absolute but rather may give way in an appropriate case to other competing interests so as to permit the use of certain procedural devices designed to shield a child witness from the trauma of courtroom testimony.

*Coy*, 487 **U.S.** at 1022, 108 **S.Ct.** at 2803, 101 **L.Ed.2d** at 868 (O'Connor, J., concurring). Justice O'Connor noted that "other competing interests" might outweigh the **"preference"** for face-to-face confrontation in an appropriate case if the state demonstrated that it "was necessary to further an important public policy," but that Iowa's "generalized legislative finding of necessity" was insufficient. *Coy*, 487 **U.S.** at 1024-25, 108 **S.Ct.** at 2804-05, 101 L.Ed.2d at 869 (O'Connor, J., concurring.) Justice O'Connor subsequently elaborated on this position in *Maryland v. Craig.*

In *Craig*, the State of Maryland charged the defendant with a number of sexual offenses. The trial court found that in-court

7

testimony by the child victims would result "in each child suffering serious emotional distress . . . such that each of these children cannot reasonably communicate." *Craig*, 497 U.*S*. at ___, 110 S.Ct. at 3162, 497 L.Ed.2d at 676. The court then permitted the children to testify by closed circuit television, a procedure authorized by statute in Maryland. Section 9-102, Maryland Code. This closed circuit television arrangement allowed the defendant to view the witnesses without allowing the witnesses to view the defendant.

The Maryland Court of Special Appeals ruled that this finding was sufficient, but the Maryland Court of Appeals reversed. The Court of Appeals held that the trial court's finding lacked the specificity required by *coy*. *Craig v. state* (Md. 1989), *560* A.2d at 1128-29. The case therefore squarely presented the Supreme Court with an opportunity to decide just how specific such findings of necessity must be.

The Supreme Court reversed, holding that the trial court's findings were not necessarily inadequate. Justice O'Connor, writing for a 5-4 majority, elaborated on her opinion in *Coy* and explained that the state's interest in protecting victims of child sex crimes from physical and psychological injury "may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Craig*, 497 U.S. at ___, 110 S.Ct. at 3167, 111 L.Ed.2d at 683. The Court reiterated that the key to this analysis is an "individualized"

finding of necessity. *Craig,* 497 U.S. at ___, 110 S.Ct. at 3169, 111 L.Ed.2d at 685.

The Court then set forth the following three-part test for measuring the adequacy of these case-specific findings of necessity:

> [1] The trial court must hear evidence and determine whether use of [a procedure other than face to face confrontation] is necessary to protect the welfare of the particular child witness who seeks to testify.
> [2] The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.
> [3] Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimus, i.e, more than "mere nervousness or excitement or some reluctance to testify."

*Craig,* 497 U.S. at ___, 110 S.Ct. at 3169, 111 L.Ed.2d at *685* (citations omitted and elements numbered for convenient reference).

In this case, the District Court relied upon *Craig's* three-part test in entering the required individualized finding of necessity. The court found as follows:

> There has been testimony in this case that there is the potential for these two young children that they will sustain some trauma. I think the word "trauma" was utilized by an expert witness in this case with respect to [J.R.]. The word "trauma" was not used with [A.C.] in his position as a witness, but the testimony indicates that he will be extremely frightened, extremely scared and, in the mind of the Court, with a 5 and a 6 year old, there is little difference between the technical meanings of words like "trauma" and scared. They're one in the same. That's essentially what we're here to do in our capacity as acting in the interests of the child witnesses and protecting their welfare when they do testify. So there is the potential that the children could be traumatized by the mere presence of the defendant.

9

> Likewise I think there is potential in this situation to be, as I questioned Ms. Bellante very specifically, that at least regarding [J.R.] the emotional distress suffered is more than the minimum amount of nervousness that ordinarily descends on any person that comes into a court of law on a case of importance. I think the same kind of circumstance can almost be presumed with respect to witness [A.C.], so the Court is going to grant the motion to screen the witnesses from the defendant.

Although the court did not track Justice O'Connor's language exactly, we believe this "individualized" finding complies with all three elements of the *Craig* test. The District Court found that the potential for trauma existed, that it would result from the mere presence of Davis in the courtroom, and that it would be more than ordinary courtroom nervousness.

Although the defendant in this case could not personally observe the witnesses, we do not find that fact dispositive.

In analyzing the essential elements required by the Confrontation Clause, the Supreme Court, in *Craig*, included the following elements:

> The combined effect of these elements of confrontation--physical presence, oath, cross-examination, and observation of demeanor by the trier of fact--serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings.

*Craig*, 497 U.S. at ___, 110 S.Ct. at 3163, 111 L.Ed.2d at 678-79.

The Supreme Court cited hearsay evidence as an example that historically there have been many exceptions to the literal requirement of face-to-face confrontation under the Confrontation Clause. The Court stated:

10

We have accordingly stated that a literal reading of the Confrontation Clause would "abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme. [Ohio v.] Roberts, 448 US [56] at 63, 65 L Ed 2d 597, 100 S Ct 2531. Thus, in certain circumstances, "competing interests, if 'closely examined,' may warrant dispensing with confrontation at trial." Id., at 64, 65 L Ed 2d 597, 100 S. Ct 2531 (quoting Chambers v. Mississippi, 410 US 284, 295, 35 L Ed 2d 297, 93 S Ct 1038 (1973), and citing Mattox, supra). . . . Given our hearsay cases, the word "confront," as used in the Confrontation Clause, cannot simply mean face-to-face confrontation, for the Clause would then, contrary to our cases, prohibit the admission of any accusatory hearsay statement made by an absent declarant--a declarant who is undoubtedly as much a "witness against" a defendant as one who actually testifies at trial.

*Craig*, 497 U.S. at —— , 110 S.Ct. at 3165, 111 L.Ed.2d at 680-81.

The Supreme Court went on to conclude that the well-being of children was such a competing interest that would excuse literal compliance with face-to-face confrontation at trial. It held:

We likewise conclude today that a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court.

*Craig*, 497 U.S. at —— , 110 S.Ct. at 3167, 111 L.Ed.2d at 683.

In this case, even though the defendant could not personally observe the child witnesses who testified against him, the basic elements relied upon by the Supreme Court in *Craig* were satisfied. The child witnesses were physically present in the court, an oath was administered, the children were cross-examined, and the jury was able to observe the demeanor of the child witnesses. Furthermore, as pointed out by the court in *Craig*, under the circumstances present in this case, "these assurances of

reliability and adversariness are far greater than those required for admission of hearsay testimony under the Confrontation Clause." *Craig*, 497 U.S. at ___, 110 S.Ct. at 3165, 111 L.Ed.2d at 682.

We hold that the District Court's case-specific finding complies with federal law and that, therefore, it did not err in permitting the placement of the screen between the witness stand and the defendant during the testimony of the child witnesses.

## II

Did the District Court err when it admitted evidence of pending sexual assault charges in another county?

Davis argues that the District Court erred in admitting evidence of unproven sexual assault charges that were still pending against him in Madison County at the time of trial. This argument occupies just one page of his opening brief and does not specifically attack any particular exhibit or witness. In his reply brief, however, he makes it clear that this argument concerns the charges against him for engaging in sexual activity with L.D. He challenges the timeliness and specificity of the State's notice as required by *State v. Just* (1979), 184 Mont. 262, 602 P.2d 957.

We find no merit in this argument because evidence about the charges against Davis for engaging in sexual activity with L.D. was part of the *corpus delicti* of the evidence tampering charge. In *State v. Riley* (1982), 199 Mont. 413, 426, 649 P.2d 1273, 1279, we said "the State is entitled to present the entire *corpus delicti* of the charged offense including matters closely related to it, <u>even when such</u>

12

evidence discloses crimes other than those charged."   (Emphasis added.)   We elaborated on **Riley** in *State v. Romero* (1986), 224 Mont. 431, 438, 730 P.2d 1157, 1162, when we said "[e]vidence of acts which are inextricably or inseparably linked with the crime charged is admissible <u>without regard to the rules governing 'other crimes' evidence</u>."   (Emphasis added.)

> The statute governing evidence tampering provides that:
>
> A person commits the offense of tampering with or fabricating physical evidence if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> (a) alters, destroys, conceals, or removes any record, document, or thing with purpose to impair its verity or availability in such proceeding or investigation . . . .

Section 45-7-207, MCA.   Thus, the State had to prove that Davis was aware of the charges pending against him regarding L.D. and that he ordered Kubichek to destroy potential evidence in order to impair its availability in that investigation.   We believe it was necessary and appropriate for the State to explore these charges in detail in order to prove Davis' awareness of the Madison County charges and the evidentiary value in the Madison County investigation of the items Davis ordered Kubichek to destroy.

We hold that the District Court did not err in admitting evidence of the pending charges in Madison County.

### III

Did the District Court err when it allowed the victim's counselor to testify about the victim's statements which were made during the investigation of the case?

13

Davis argues that the District Court admitted inadmissible hearsay by permitting Eugenia Bellante to testify about conversations she had with J.R. during the course of J.R.'s therapy. Our review of the record reveals only one objection during Bellante's testimony. This was a foundational objection directed at the State's hypothetical question to Bellante about the psychological impact on very young children of face-to-face testimony against the person they have accused of sex crimes. The court overruled this objection, and Davis does not predicate error on this ruling by the trial court. We are unable to construe this foundational objection as an objection to inadmissible hearsay. Thus, the defense neither objected to any questions calling for hearsay, nor moved to strike the answers that were given.

As we pointed out in Part I of this opinion, an objection at trial is essential to preserve alleged errors for our review. Section 46-20-104(2), MCA. We therefore decline to review this alleged error of the District Court in allowing Bellante to testify about her conversations with J.R.

## IV

Did the District Court err when it denied Davis' motion for acquittal which was based on the sufficiency of the proof?

In the Amended Information, the State alleged that the assault on J.R. occurred between October 1989 and April 1990. No witness at trial provided direct testimony that the assault occurred on a particular date falling within that time span. From this, Davis asserts that the State did not prove beyond a reasonable doubt that

the offense occurred within the times alleged in the Amended Information.

We conclude that the State did prove that the offense occurred at least once between October 1989 and April 1990. In this regard, the District Court found as follows:

> The effect of this testimony is to present the court with significant *unrebutted* circumstantial evidence reflecting that as of September 5, 1989, [J.R.] did not know the Defendant, but on April 4, 1990, she did know the Defendant--thus the time period alleged in the Information is covered by the evidence when we consider that the Defendant had no access to [J.R.] from September 5, 1989 until October 2, 1989. During that period he was incarcerated in the Gallatin County Detention Center. He was released on bail on October 2, 1989, and remained free on bail until April 10, 1990, when Defendant was again arrested and confined in the Gallatin County Detention Center where he has since remained.
>
> When [J.R.] told Ms. Edwards, on April 4, 1990, that she then *did know* Shawn, her baby sitter, and thereafter told of the significant sexual contact with the Defendant, and picked Defendant out of a photo lineup--after denying that she knew any Shawn or Shannon or September 5, 1989 in conversation with Ms. Edwards--*[J.R.]'s acquisition of knowledge of Defendant, and her testimony as to his sexual contact with her had to take place during the precise period of time alleged in the Information.* [Emphasis in original.]

We will not overturn judge-made findings of fact unless they are clearly erroneous. *State v. Cope* (Mont. 1991), 819 P.2d 1280, 48 St.Rep. 949. We conclude that the circumstantial inferences the District Court drew from the evidence are not clearly erroneous.

We hold that the because the District Court did not err in finding that the offense occurred within the time alleged in the

15

amended information, **it** did not **err in** denying Davis' motion for acquittal.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice Terry N. Trieweiler specially concurring.

I concur in the above opinion because the procedures taken by the District Court were only objected to on the basis of the United States Constitution. In applying the Confrontation Clause of the Sixth Amendment to the United States Constitution, I defer to those decisions of the United States Supreme Court, and specifically *Maryland v. Craig.*

However, if the procedure taken to screen the defendant from the child victim had been challenged on the basis of Article 11, Section 24, of the Montana Constitution, it is clear to me that the same result could not occur. I would, therefore, encourage prosecutors who encounter a similar problem in the future to try to find some way to protect child victims which does not preclude the defendant from observing their demeanor and testimony while it is being given.

_____
Justice

17

Justice R. C. McDonough dissents.

I dissent as to the result of the majority opinion, I believe there is a distinction between this case and the Coy and Marvland cases which is dispositive. Coy v. Iowa (1988), 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857; and Maryland v. Craig (1990), 497 U.S. ___, 110 S.Ct. 3157, 111 L.Ed.2d 666. The defendant in this case, because of the opaque screening and its placement, could not personally observe the witness while in the cited cases the defendant was able to observe the witness during testimony.

The Sixth Amendment to the United States Constitution provides two elements of protection for a criminal defendant. First, it provides "the right physically to face those who testify against him." Second, it provides the right to cross-examination. Pennsylvania v. Ritchie (1987), 480 U.S. 39, 51, 94 L.Ed.2d 40, 107 S.Ct. 989. These two elements are interwoven. See Davis v. Alaska (1974), 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347. It is clear that the confrontation clause does not provide an "absolute" right to face to face encounter, i.e. hearsay exceptions. See Mancusi v. Stubbs (1972), 408 U.S. 204, 92 S.Ct. 2398, 33 L.Ed.2d 293, and the majority opinion. The hearsay exceptions are based on the unavailability of witnesses and a requisite 'indicia' of inherent reliability of such testimony. The exception of Coy and Marvland is essentially an extension of the unavailable witness exception.

The right of cross-examination is not solely a function of defense counsel, it is accorded to the defense. By observing the demeanor, etc., of the witness, the defendant can assist in the

18

cross-examination of the witness. The defendant usually is acquainted with the witness, knows his or her traits, propensities, etc., which through observation by the defendant would assist counsel in cross-examination as to recollection, veracity and communication skills of the witness. The defendant's ability to assist counsel enhances the central concerns of the clause to ensure reliability of the evidence by subjecting it to testing in an adverse setting. Providing the defendant a right to face and observe his accuser, even though the accuser does not have to face the defendant, does not interfere with the findings of necessity of Coy and Maryland that outweigh the requirement of literal face to face meeting of the defendant and the accused.

In Kirby v. United States (1899), 174 U.S. 47, 55, 43 L.Ed. 890, 19 S.Ct. 574, the Supreme Court held that a defendant may be convicted only by:

> witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules . . . (Emphasis added.)

Kirby is cited with approval in both Coy and Maryland. In both Coy and Maryland the defendant was able to view the witness and thereby had an opportunity to assist counsel in cross-examintion.

The defendant's right to view the witness' demeanor is an essential part of cross-examination. Justice O'Connor writing for the majority in Craig states:

> We find it significant, however, that Maryland's procedure preserves all of the other elements of the confrontation right: . . . the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video moniter) the demeanor (and body) of the witness

19

as he or she testified.   (Emphasis added.)

at 110 S.Ct. at **3166**.   Justice O'Connor also refers to cross-examination in a quote as the "greatest legal engine ever invented for the discovery of truth."   Craig, 110 S.Ct. at **3163,** citing California v. Green **(1970), 399** U.S. **149, 90** S.Ct. **1930, 26** L.Ed.2d **489.**   Certainly denial **of** this right, by not allowing defendant to view the witness either directly, by video (Coy), by use of lighting skills (Marvland), by one-way glass screens, or by other means, would hamper the right and opportunity for effective cross-examination.   Not allowing the accused to view the witness unnecessarily broadens the exception carved out in Coy and Marvland, and thereby violates the Sixth Amendment of the United States Constitution.

_____
                Justice

Justice Karla M. Gray concurs in the foregoing dissent.

_____
                Justice

Justice William E. Hunt, Sr., concurs in the foregoing dissent.

_____
                Justice

20

April 17, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Marcelle C. Quist
QUIST LAW OFFICE
1805 West Dickerson
Landmark Center, Bldg. 2, Suite 1A
Bozeman, MT 59715

Hon. Marc Racicot, Attorney General
Joe Thaggard, Assistant
Justice Building
Helena, MT 59620

Michael Salvagni, Gallatin County Attorney
Martin Lambert, Deputy County Attorney
615 s. 16TH
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy