No. 92-052

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

  Plaintiff and Respondent,

 v.

DARYL SCOTT,

  Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
      In and for the County of Broadwater,
      The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Leo J. Gallagher, Attorney at Law, Helena, Montana

  For Respondent:

    Honorable Marc Racicot, Attorney General; Jennifer
    Anders, Assistant Attorney General, Helena, Montana

    John T. Flynn, Broadwater County Attorney,
    Townsend, Montana

Submitted: February 2, 1993

Decided: April 1, 1993

FILED

Filed: APR 1 - 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Daryl Scott (Scott) appeals his conviction for sexual assault following a jury trial in the District Court for the First Judicial District, Broadwater County. We affirm the conviction.

The issues raised in this appeal are restated as:

1. Did the District Court err in refusing to grant Scott's motion to dismiss for lack of speedy trial?

2. Was Scott's right to confrontation denied because the District Court allowed the testimony of the victim to be videotaped and shown at trial without first requiring the State to make a showing of necessity?

3. Did the filming techniques utilized by the video-camera operator prejudice Scott by serving to emphasize the victim's testimony and inflame the jury's passion?

4. Did the District Court err in denying Scott's motion for a continuance prior to videotaping the victim's testimony?

5. Was certain testimony of the victim's therapist, regarding the victim's psychiatric symptoms, improperly admitted by the District Court?

6. Did the District Court err by instructing the jury that the State was not required to state the time and place of the alleged criminal offense with impossible precision?

In July 1990, the victim, J.R., told her grandmother that Scott, the child's stepfather, had sexually assaulted her sometime in the fall of 1989. The grandmother relayed these allegations to J.R.'s mother. Apparently, the grandmother was not satisfied with the course of action taken by the mother. Several weeks later, the grandmother filed a report of child abuse with the Broadwater County Sheriff's Office. In addition, the grandmother took J.R. to

2

see a social worker who interviewed J.R. about the allegations on September 14 and 17, 1990.

At the first interview, J.R. did not specifically tell the social worker that Scott had sexually assaulted her. At the second interview, J.R. relayed that Scott had sexually assaulted her in late September or early October, 1989. Scott was arrested on September 27, 1990.

On October 10, 1990, the State of Montana (State) filed an information against Scott charging him with one count of sexual assault in violation of § 45-5-502(1) and (3), MCA. Scott was released from jail on bond on October 19, 1990. A jury trial held on June 10 and 11, 1991, resulted in a verdict of guilty. Scott was sentenced to twenty years in the Montana State Prison, with ten years suspended. In addition, Scott was ordered to complete a sexual offenders program upon his release from prison. It is from this conviction that Scott appeals.

I

Did the District Court err in refusing to grant Scott's motion to dismiss for lack of speedy trial?

Scott contends the prejudice caused to him by the delay between his arrest and the time of trial violated his constitutional right to a speedy trial. He argues the State failed to provide an excuse reasonable enough to overcome the constitutional presumption that a delay of the length in this case,

3

256 days, prejudiced him. We agree that a delay of 256 days is sufficient to trigger inquiry as to whether a defendant's right to a speedy trial has been violated. However, we do not agree the State failed to overcome the presumption that the delay in this case prejudiced Scott.

Under the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution, defendants in all criminal proceedings are guaranteed the right to a speedy trial. State v. Hembd (Mont. 1992), 838 P.2d 412, 416, 49 St.Rep. 788, 790. In ascertaining whether the right to a speedy trial has been violated, a sensitive four-part balancing test is analyzed. State ex rel. Briceno v. District Court (1977), 173 Mont. 516, 518, 568 P.2d 162, 163. The factors to be balanced are: the length of delay; the reasons for the delay; assertion of the right by the defendant; and the prejudice to the defendant. State v. Reynolds (1990), 243 Mont. 1, 4-5, 792 P.2d 1111, 1113.

The length of delay which is "presumptively prejudicial depends on the facts of each individual case." State v. Dahms (1992), 252 Mont. 1, 12, 825 P.2d 1214, 1220, citing State v. Heffernan (1991), 248 Mont. 67, 70, 809 P.2d 566, 568. However, we have held that a delay of over 200 days will usually trigger the full analysis. Dahms, 825 P.2d at 1220-21. In this case, a delay of 256 days, all of which was attributable to the State, is sufficient to warrant further inquiry.

4

Once a delay is sufficient in length to trigger a full speedy trial inquiry, a presumption exists that the defendant has been denied a speedy trial. Reynolds, 792 P.2d at 1113. At this point, "the burden shifts to the state to either offer a reasonable excuse for the delay or demonstrate that the defendant was not prejudiced by the delay." Reynolds, 792 P.2d at 1113.

In the case at bar, the State moved twice to continue the trial date. The first motion was made on January 23, 1991, and the second on April 4, 1991. Scott acquiesced to these continuances with the understanding that his right to a speedy trial would be preserved. The first continuance was requested because in the opinion of Dr. N.M. Campbell, it would not have been in the best interests of J.R. to be subjected to any extensive and intensive interviewing until she had undergone further psychological evaluation and counseling. The second continuance was requested because the therapist conducting J.R.'s sexual trauma assessment could not make an accurate assessment of J.R.'s ability to testify until May 1, 1991.

In addressing the reasons for the delay, Scott contends the State did not offer a reasonable excuse because it delayed obtaining counseling for J.R. While the record reveals that J.R. did not see a therapist until mid-January 1991, it also reveals the reason for the delay was the unavailability of a therapist. Testimony elicited from a defense witness reveals that J.R. was on

5

a waiting list for approximately four and one-half months before a therapist was finally able to work with her.

In Reynolds, we were confronted with a similar set of facts regarding the unavailability of a material witness for the State to testify because of emotional instability. Reynolds, 792 P.2d at 1114. Like the victim in the instant case, the victim in Reynolds required psychological therapy to enable her to testify without suffering further psychological damage. We held that the State provides a reasonable excuse for the delay when a material witness is unavailable to testify. Reynolds, 792 P.2d at 1114. "The State is not charged with speedy trial delay when a material witness with a 'valid reason' is not available." State v. Tilly (1987), 227 Mont. 138, 142, 737 P.2d 484, 487. The unavailability of counseling for four and one-half months, and the need to obtain such counseling before J.R. would be able to testify, constitutes a valid excuse.

In addressing the third Reynolds factor, the record reveals that Scott asserted his right to a speedy trial in a May 22, 1991 motion to dismiss. Therefore, this prong has been satisfied.

The final factor to be analyzed is the prejudice to the defendant. Where the trial in a criminal proceeding has been delayed, three interests of the defendant may be prejudiced. Tilly, 737 P.2d at 487. Those interests are: to prevent oppressive pretrial incarceration; to minimize the anxiety of the accused; and

6

to limit the possibility the defense will be impaired. Tilly, 737 P.2d at 487.

When applied to the facts in this case, we hold Scott's interests were not prejudiced by the State's delay in bringing this case to trial. First, on October 19, 1990, approximately three weeks after his arrest, Scott was released from jail after posting bond. The duration of Scott's pretrial incarceration was not oppressive. Second, Scott does not contend, nor does the record reveal, he suffered undue anxiety or concern. Finally, we do not agree with Scott's contention that his defense was impaired by the delay.

Scott argues the record is replete with instances where child witnesses could not remember important details thereby impairing his defense. However, the record indicates that those details which the child witnesses were unable to recall actually benefitted the defense. For example, one of the allegations in this case was that Scott assaulted J.R. while she was sitting on his lap steering the car while other children were present in the car. When one of the witnesses was questioned about this, the following testimony was elicited:

> Q. Okay. And did [J.R.] or did Daryl let [J.R.] drive back from the trip that you are talking about?
>
> A. I don't remember.

Furthermore, another witness testified similarly:

7

Q.  Okay.  So you remember all of you being in the back seat and [J.R.] being in the front seat?  Do you remember [J.R.] ever driving the car?

A.  I am not sure.

Q.  When you say you are not sure, you just don't remember or --

A.  I don't remember.

We hold the defense was not impaired by the State's delay in bringing this case to trial.  Furthermore, we hold Scott's constitutional right to a speedy trial was not violated.

II

Was Scott's right to confrontation denied because the District Court allowed the testimony of J.R. to be videotaped and shown at trial without first requiring the State to make a showing of necessity?

Both the United States and the Montana Constitutions guarantee a criminal defendant the right to confront the witnesses against him.  Amend. VI, U.S.Const.; Art. II, Sec. 24, Mont.Const.  Scott alleges his right to confront the key witness against him was violated because: (1) the District Court allowed the victim's testimony to be videotaped and shown to the jury without a prior finding that there was a compelling reason to do so; and (2) because he and the jury were deprived of the ability to observe the demeanor of the witness in the courtroom.

Sections 46-15-401 and 46-15-402, MCA (1989) (both repealed and recodified as § 46-16-216, MCA), controlled the admissibility and procedural aspects of videotaped testimony in this case.

8

> For any prosecution commenced under 45-5-502(3) . . . . , the testimony of the victim, at the request of such victim and with the concurrence of the prosecuting attorney, may be recorded by means of videotape for presentation at trial. The testimony so recorded may be presented at trial and shall be received into evidence. The victim need not be physically present in the courtroom when the videotape is admitted into evidence.

Section 46-15-401, MCA (1989). Section 46-15-402, MCA (1989), reads:

> (1) The procedural and evidentiary rules of the state of Montana which are applicable to criminal trials within the state of Montana shall apply to the videotape proceedings authorized by this part.

> (2) The district court judge, the prosecuting attorney, the victim, the defendant, the defendant's attorney, and such persons as are deemed necessary by the court to make the recordings authorized under this part shall be allowed to attend the videotape proceedings.

Under the above statutory scheme, a request by a victim of sexual abuse, along with the concurrence of the prosecutor, allows the videotaping of the victim's testimony for possible introduction at trial. If offered, § 46-15-401, MCA (1989), mandates the videotaped testimony be received into evidence. We note that this requirement is subject to all applicable rules of evidence. Furthermore, § 46-15-402(2), MCA (1989), preserves a defendant's constitutional right to confrontation by allowing him to be present at the videotaping proceedings. Scott contends this statute is unconstitutional because it does not require the State to make a preliminary showing that the victim is unable to testify before the

9

jury. However, given the facts in the instant case, the precedent relied upon by Scott to support this contention is misplaced.

In Maryland v. Craig (1990), 497 U.S. ___, 110 S.Ct. 3157, 111 L.Ed.2d 666, and State v. Davis (Mont. 1992), ___ P.2d ___, 49 St.Rep. 342, the defendants were denied the opportunity to confront the witnesses against them face-to-face during their testimony. In Craig, the child witness, prosecutor, and defense counsel were removed to a separate room, while the jury, judge, and defendant remained in the courtroom. Craig, 110 S.Ct. at 3161. Thereafter, the child witness was examined and cross-examined while a one-way video monitor recorded and displayed the testimony to those in the courtroom. Craig, 110 S.Ct. at 3161. In Davis, an opaque screen was placed between the defendant and two child witnesses. Davis, 49 St.Rep. at 343. Again, the defendant could not personally observe the child witnesses who testified against him. Davis, 49 St.Rep. at 345.

Pursuant to Craig, we held in Davis that before a defendant's right to confront the witnesses against him is limited or abridged, the district court must make case-specific findings that the psychological well-being of the child abuse victim outweighs a defendant's right to face his accusers. Davis, 49 St.Rep. at 345. However, as mentioned, both of these cases involved denial of the right of face-to-face confrontation between the defendant and the victim/witness. That fact is not present here. We hold the case-

10

specific findings of necessity required under Craig and adopted in Davis are inapplicable to the case at bar. Where the State's interest is to protect child witnesses from courtroom trauma generally, and not the trauma associated with the presence of the defendant, the child "could be permitted to testify in less intimidating surroundings . . . ." Craig, 110 S.Ct. at 3169.

Under the statutory procedure used in this case, Scott was entitled to be present at the videotaping of J.R.'s testimony and confront his accuser. He chose not to do so. Furthermore, the essential elements required by the confrontation clause--physical presence, oath, cross-examination, and observation of demeanor by the trier of fact (although by video recording)--are present here. Craig, 110 S.Ct. at 3163; Davis, 49 St.Rep. at 345. Accordingly, we hold the procedure utilized in this case pursuant to §§ 46-15-401 and 46-15-402, MCA (1989), did not violate Scott's constitutional right to confrontation.

III

Did the filming techniques utilized by the video-camera operator prejudice Scott by serving to emphasize the victim's testimony and inflame the jury's passions?

On the opening day of trial, Scott objected to the presentation of the videotaped testimony to the jury. The District Court overruled Scott's objection. On appeal, Scott argues the techniques used by the camera operator created undue sympathy with the jury. By placing undue emphasis on the nature of J.R.'s

testimony by "zooming in" when she cried or was otherwise distressed, Scott argues the filming techniques prejudiced him.

Although relevant, and admissible under § 46-15-401, MCA (1989), the videotaped testimony could have been excluded by the District Court if its probative value was substantially outweighed by the danger of unfair prejudice to Scott. Rule 403, M.R.Evid. Additionally, the videotaped testimony could have been excluded if its admission would have violated any other applicable evidentiary rules. Whether the prejudicial effect is outweighed by probative value is a matter within the discretion of the trial court. The admissibility of such evidence is within the discretion of the District Court and will not be disturbed unless there is a manifest abuse of discretion. Zeke's Distributing v. Brown-Forman Corp. (1989), 239 Mont. 272, 277, 779 P.2d 908, 911.

The District Court reasoned that the videotape did not inform the jurors of something they did not already know (that J.R. was crying). Furthermore the record reveals that the camera operator was seated in approximately the middle of the back row of the jury box. Our own viewing of the tape does not reveal any prejudicial filming techniques. We hold the District Court did not abuse its discretion in allowing the jury to watch the videotape testimony.

Regardless of our holding on this issue, Scott urges this Court to implement uniform procedures applicable to the videotaping of testimony for possible use at trial such as those found in State

12

v. Sheppard (N.J. 1984), 484 A.2d 1330, 1349-50.  We decline to do so.

## IV

Did the District Court err in denying Scott's motion for a continuance prior to videotaping the victim's testimony?

The day the videotaped testimony of J.R. was to be taken, Scott moved for a continuance on the ground that he did not have adequate time to prepare for cross-examination of J.R.  The District Court denied this motion.  On appeal, Scott asserts the District Court's decision to deny his motion prejudiced his defense in two ways.

First, Scott contends a statement given by J.R. one week prior to the time scheduled for her testimony varied from her prior statements as to when the assault occurred.  Second, Scott argues that on the day of testimony, he was unaware that J.R. was experiencing psychiatric symptoms in which she saw people who were not there, and heard voices, and had discussed the symptoms with her therapist.  One week later, Scott became aware of the symptoms through a report prepared by the therapist.  Although he was allowed to question the therapist about these symptoms, Scott contends he was denied the opportunity to effectively cross-examine J.R. on this subject.  However, upon receiving the therapist's report, Scott did not move to re-open the cross-examination of J.R.

Whether a continuance should be granted is not a matter of

13

right but, rather, is within the sound discretion of the trial court. Section 46-13-202(3), MCA; State v. McPherson (1989), 236 Mont. 484, 487, 771 P.2d 120, 122. We will not overturn a district court's decision to deny a motion for a continuance unless the district court abused its discretion. McPherson, 771 P.2d at 122. An abuse of discretion is present only when the district court's ruling prejudices the defendant. State v. Kirkland (1979), 184 Mont. 229, 235, 602 P.2d 586, 590.

In this case, Scott has failed to demonstrate that he was prejudiced. As to his inability to cross-examine J.R. about her psychiatric symptoms, Scott advances no argument, nor points to anything in the record, which demonstrates how his lack of awareness of the therapist's report at the time of videotaping prejudiced him. Likewise, Scott does not elaborate how J.R.'s change in story as to when the assault occurred prejudiced him. To the contrary, the record reveals that Scott was able to effectively cross-examine J.R. on this subject. Upon cross-examination, J.R. reiterated that the assault occurred on a "school day" rather than in the summer months as she had told the defense one week before. Any variance in J.R.'s story would go to her credibility. Evaluation of the credibility of a witness is strictly within the province of the jury. State v. Walters (1991), 247 Mont. 84, 90, 806 P.2d 497, 500.

14

For this Court to overturn the District Court's denial of a motion for continuance, an abuse of discretion which prejudices the defendant must be demonstrated. McPherson, 771 P.2d at 122. Scott has demonstrated no such prejudice in this appeal. The District Court did not err in denying Scott's motion for a continuance.

V

Was certain testimony of J.R.'s therapist, regarding J.R.'s psychiatric symptoms, improperly allowed by the District Court?

Scott claims the District Court improperly allowed J.R.'s therapist to bolster her testimony. He contends that by allowing the therapist to testify that it is not unusual for victims of sexual abuse to hear voices or see things that are not reality, the District Court allowed the therapist to vouch for the credibility of J.R. Thus, the fact-finding province of the jury was invaded because the testimony served to tell the jury that J.R. had in fact been assaulted by Scott, and he was the cause of her psychiatric symptoms. We disagree.

Scott relies upon State v. Harris (1991), 247 Mont. 405, 808 P.2d 453, to support his proposition that an expert witness cannot comment on the credibility of an alleged victim. Harris, 808 P.2d at 455. However, Scott fails to note that we have allowed expert testimony regarding the sometimes puzzling and contradictory behavior of children who have been sexually assaulted. Harris, 808 P.2d at 456. Furthermore, Montana allows "expert witnesses to

15

testify directly about the credibility of a victim who testifies in a child sexual abuse trial" under certain circumstancs. State v. Scheffelman (1991), 250 Mont. 334, 342, 820 P.2d 1293, 1298. Such testimony is proper when the child victim testifies, the credibility of the child is attacked, and the expert is properly qualified. Scheffelman, 820 P.2d at 1298. In this case, the first two Scheffelman factors were satisfied. Additionally, Scott did not object to the qualifications of the therapist as an expert, nor does he argue on appeal the District Court erred in treating her as an expert.

Expert testimony relating to the contradictory behavior, and, where appropriate, the credibility of a child victim of sexual abuse, will be allowed to enlighten the jury on a subject with which most people have no common experience and to assist the jurors in assessing the credibility of the victim. State v. Donnelly (1990), 244 Mont. 371, 378, 798 P.2d 89, 93. Where the expert testimony does not impinge upon the jury's obligation to ultimately decide the credibility of the victim, such testimony is proper if offered "for the purpose of helping the jury to assess the credibility of a child sexual assault victim." Donnelly, 798 P.2d at 93, citing State v. Geyman (1986), 224 Mont. 194, 200, 729 P.2d 475, 479.

Throughout the trial Scott attempted to portray J.R. as a child who made up the sexual assault because she was capable of seeing people who were not there and hearing voices which were not

16

real. However, it was Scott who called the therapist during his case-in-chief and opened the door to testimony about these psychiatric symptoms.

In his attempt to impugn J.R., Scott elicited testimony regarding J.R.'s psychiatric symptoms and attempted to relate these psychiatric symptoms as being caused by two other men and possibly by a deceased brother. Scott's theme was clear, to raise a reasonable doubt in the minds of the jurors as to whether J.R.'s allegations against Scott were true because the child's psychiatric symptoms could be related to others.

Upon cross-examination, the State merely had the therapist explain that it was not uncommon for child sexual assault victims to suffer psychiatric symptoms which include seeing people and hearing voices which are not real. Furthermore, in the therapist's opinion, these symptoms were related to Scott, and not to those upon whom the defense was attempting to lay blame. Contrary to Scott's contention, the testimony of the therapist was not a comment on his guilt.

Given the testimony of the therapist elicited by the defense on direct examination, the jury was entitled to be enlightened as to the root of these psychiatric symptoms on cross-examination. "The right of cross-examination extends not only to all facts stated by the witness in [her] original examination, but to all other facts connected with them, directly or indirectly . . . ."

17

Miles Savings Bank v. Liquin & Swandal (1931), 90 Mont. 513, 521, 4 P.2d 482, 485. The latitude allowed in cross-examination is determined by the district court. State v. Hart (1981), 191 Mont. 375, 383, 625 P.2d 21, 26. We will not disturb the ruling of the district court absent a clear abuse of discretion. Hart, 625 P.2d at 26.

We hold the testimony of the therapist elicited by the State on cross-examination did not encroach upon the province of the jury to decide for themselves the credibility of J.R. The District Court did not abuse its discretion in allowing the cross-examination.

VI

Did the District Court err by instructing the jury that the State was not required to state the time and place of the alleged criminal offense with impossible precision?

In his final assignment of error, Scott contends Jury Instruction No. 13 effectively allowed the State to expand the time frame alleged in the information upon which he relied in preparing his defense. Instruction No. 13 reads:

> You are instructed that the law does not require that the time and place of an alleged criminal act be stated with impossible precision, it merely requires that they be stated as definitely as possible.

The District Court found that this instruction did not in any way contradict the allegation contained in the information, which read, in part:

18

[O]n or about late September or early October, 1989, at the County of Broadwater, State of Montana, the above-named Defendant committed the offense of Sexual Assault, a Felony, . . . .

Scott argues that the State knew three weeks before trial that J.R. had changed her story and was alleging the assault occurred in the summer of 1989 rather than the fall. Therefore, Scott claims, the State was allowed to amend the information in the eleventh hour to charge the offense was committed at a different time. This argument is without merit.

At trial, the evidence presented by the State as to when the assault occurred was consistent with the information. From the record, it is clear that the State in no way attempted to pursue any theory which would have placed the assault outside the time frame contained in the information. To the contrary, it was Scott who presented evidence at trial in an attempt to persuade the jury that the assault could not have occurred during this time frame.

It is within the district court's prerogative to determine which jury instructions are necessary. Hembd, 838 P.2d at 415. "On review, we determine whether [the] instructions, as a whole, fully and fairly present the applicable law of the case." Hembd, 838 P.2d at 415. We hold the District Court did not err in giving this instruction and, as a whole, the jury instructions fully and fairly presented the applicable law of the case.

19

We determine this case presents no reversible error. The conviction is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

20