No. 93-456

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

    Plaintiff and Respondent,

-v-

PAUL A. ALEXANDER,

    Defendant and Appellant.



FILED

MAY 24 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Don Vernay, Kalispell, Montana

    For Respondent:

    Hon. Joseph P. Mazurek, Attorney General, Barbara C.
Harris, Assistant Attorney General, Helena, Montana;
Thomas J. Esch, Flathead County Attorney, Valerie D.
Wilson, Deputy, Kalispell, Montana

Submitted on Briefs: February 17, 1994

Decided: May 24, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal by defendant Paul A. Alexander from the judgment entered in the Eleventh Judicial District Court, Flathead County, following a jury conviction of one count of sexual intercourse without consent and one count of sexual assault, both felonies. We affirm in part and reverse in part and remand to the District Court for resentencing.

Alexander presents two issues for our review:

I. Did the District Court err in permitting the jury to hear improper hearsay testimony?

II. Did the District Court err in refusing to continue the sentencing in order to allow the inclusion of a sex offender evaluation in the Pre-Sentence Investigation?

Paul A. Alexander (Alexander) was originally charged with two counts each of sexual assault and sexual intercourse without consent, all felonies, involving two of his step-grandchildren, a boy and a girl. The boy was eleven years old at the time Alexander was charged with the offenses. The charges regarding the five-year-old girl were later dismissed upon motion by the State that she was not competent to testify.

The alleged abuse of Alexander's step-grandson had begun when he was in the first or second grade and had continued until he was in the fourth grade. Testimony showed that the victim was alone with his step-grandfather almost on a daily basis, that they shared a "special relationship" and spent a good deal of time together. The victim was often alone in the house with Alexander while his

2

mother, grandmother and other household members were outdoors working horses or otherwise absent. Further, the victim, his parents and older brother had stayed with the Alexanders for a period of nine months in 1988 while their home was being constructed.

In April of 1992, Alexander and his wife separated. The victim's mother testified that in August of 1992, her son (the victim) came to her very upset, crying and feeling he had done something wrong because of something Alexander had done to him. The mother took him to a counselor and the sexual abuse was subsequently reported to the police. Alexander was tried before a jury on June 16 and 17, 1993, for committing the two offenses involving his step-grandson. On June 17, 1993, the jury returned a guilty verdict for each of the offenses against the boy.

Prior to the trial, on June 16, 1993, Alexander filed a Motion in Limine to bar statements made by the victim to several persons as inadmissible hearsay. Although the court granted the defendant's motion subject to allowance by the court pursuant to Rule 801(d)(1)(A) or (B), M.R.Evid., the prosecution made several references to the material covered by Alexander's motion in its opening statement during the trial. Testimony elicited by the prosecution and objected to by Alexander as hearsay was allowed over his ongoing objections.

During a recess of the trial, Alexander moved the court for a mistrial based on the following four points: (1) in opening statements, the State violated the Order in limine by referring to

3

statements made by the victim to Brad Custer, a school counselor, that the abuse had occurred in Alexander's home; (2) also in opening statements, the State violated the Order in limine by referring to statements made by the victim to Detective Maxine Lamb; (3) Brad Custer's testimony stating that the victim had told him that the abuse occurred in his step-grandfather's house; and (4) the testimony by the victim's mother concerning what her son had told her about the alleged abuse and what a counselor had told her concerning the abuse. Alexander's motion for a mistrial was denied.

Following that denial of his motion, Alexander again objected to statements introduced by Robert Piersall (Piersall), a licensed social worker in private practice in Kalispell, who had treated the victim for sexual abuse when the victim's parents brought him to Piersall for counseling. The District Court allowed Piersall to testify about a post-traumatic stress disorder which Piersall had concluded that the victim suffered from and which was evident in children who had been sexually abused or had suffered from other traumatic events. Piersall further testified that he knew of no other traumatic events in the victim's experience.

After the jury returned the guilty verdicts against Alexander on both counts regarding his step-grandson, a Sentencing Hearing was set for August 5, 1993. The District Court ordered a presentence investigation. On June 24, 1993, Alexander filed a Motion for Evaluation requesting that an evaluation be conducted to assess his amenability to outpatient sexual offender treatment.

4

The District Court ordered such an evaluation to be completed by Northwest Family Recovery in Kalispell and ordered further that it be included in the presentence investigation.

Andy Hudak (Hudak), director of Northwest Family Recovery was conducting the sex offender evaluation of Alexander. Hudak had not completed the evaluation by August 5, 1993, the date scheduled for the Sentencing Hearing. Alexander moved to continue the hearing until the evaluation was completed; this motion was denied by the District Court. The State presented information at the Sentencing Hearing concerning information Hudak had provided to the prosecutor regarding Alexander's amenability to treatment. In spite of the fact that the evaluation had not been completed, the District Court sentenced Alexander to thirty years imprisonment and designated him a dangerous offender for parole purposes, with the added requirement that he must successfully complete the sex offender program at the Montana State Prison to be considered for parole. Additional facts will be supplied as necessary throughout this opinion.

### Issue I: Hearsay

Did the District Court err in permitting the jury to hear improper hearsay testimony?

Alexander contends that the District Court's admission of hearsay statements made by the victim to Brad Custer, Detective Maxine Lamb, his mother and to Robert Piersall was error and resulted in substantial prejudice to him. He contends that the pretrial Motion in Limine and resulting Order acted to enjoin the State from "referring to or using, in any manner, hearsay

5

statements made by the victims to Brad Custer, Maxine Lamb, Robert Piersall and Lauren Langmead, unless and until same are ruled allowable by the court pursuant to Rule 801 (d)(1)(B)." Alexander claims that the court then improperly allowed such hearsay statements during the trial, beginning with statements made by the State during its opening statements.

Alexander contends that the following statements made by the prosecutor during her opening statements to the jury constitute reversible error:

> . . . And in Late August of 92, [the victim] began approaching his parents saying that he felt he had done something wrong and he would be crying. He would say that Paul would tickle him on his thighs, on his legs. And the parents, as any parent would, investigated. And they went and talked to the school counselor; and the school counselor called Maxine Lamb of the Sheriff's Department; and Maxine Lamb of the Sheriff's Department suggested they go see Brad Custer of the Department of Family Services.

> . . .

> So Brad Custer interviewed the child, and then referred the case back to the Flathead County Sheriff's Department.
> It wasn't until the 31st of December, New Years eve that Maxine finally interviewed [the victim] . . . After speaking with [the victim], Maxine then spoke with the defendant, and he was interviewed by Maxine Lamb also on that day, on New Years eve, 1992.

Alexander claims that the statements by the prosecutor regarding the contact of the victim with Brad Custer and Maxine Lamb constitute improperly admitted hearsay.

In the District Court's Order concerning presentation of hearsay, the court stated it would not allow statements made by the named witnesses unless and until it ruled on the statements. The

6

statements made by the prosecutor as detailed above do not constitute hearsay, but rather allude to testimony of certain witnesses to be called during the trial. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), M.R.Evid.

However, citing State v. West (1980), 190 Mont. 38, 42, 617 P.2d 1298, 1300, Alexander contends that certain statements made here are grounds for reversal because the prosecutor's reference to inadmissible evidence in her opening statement contributed to his conviction. According to the ruling in West, hearsay evidence alluded to in opening statements must be so highly prejudicial that it supports a reasonable probability that the statements led to the defendant's conviction. West, 617 P.2d at 1300.

The prosecutor's statements as quoted above do not contain any statements made by Brad Custer or Maxine Lamb. They merely detail the course of events leading up to Detective Lamb's interview with the defendant. Her statements chronicle the development and investigation of the case to the point of charging Alexander with the offenses against his step-grandson. We conclude that the prosecutor's statements do not in any sense constitute testimony, nor did they prejudice Alexander by alluding to improper witness hearsay testimony. Thus, Alexander's objection to the statements on these bases is misplaced.

Alexander also claims certain testimony by witnesses involved inadmissible hearsay statements. He first contends that statements

7

made by Brad Custer, which we quote in their entirety here, were inadmissible hearsay:

> Q. [by Ms. Wilson] And through your investigation, were you able to establish where the alleged abused [sic] occurred?
>
> A. [by Brad Custer] Yes, I was.
>
> Q. And where was that, Mr. Custer?
>
> A. [The victim] told me that the incident he described occurred at his step-grandfather's house in Kalispell. He listed that as 83 Dern Road in Kalispell.
>
> Q. And would that be in Flathead County?
>
> A. Yes, it would.

The District Court ruled that this testimony was in the nature of foundation and background.

The State contends that this testimony by Mr. Custer was clearly elicited to establish venue in Flathead County and is not hearsay. Alexander claims that there was never any question of or challenge to venue. It is clear from the questions and answers in the transcript that the statements only establish the place where the incidents occurred and do not constitute testimony that Alexander was the person who committed the acts. However, our question is whether or not that can be classed as inadmissible hearsay.

Rule 801(c), M.R.Evid., provides that hearsay is a statement made by someone other than the declarant offered in evidence to prove the truth of the matter asserted. Clearly, Mr. Custer's statements as set forth above were offered into evidence to prove that the incident the victim described had occurred in Flathead

8

County and as such constituted inadmissible hearsay as they were being offered by someone other than the declarant.

Having determined that error was committed by allowing the prosecutor to present hearsay testimony, we next address whether that error was harmless. Montana follows the United States Supreme Court's test for determining what constitutes harmless error. State v. Wallace (1986), 223 Mont. 454, 458, 727 P.2d 520, 523. That definition provides:

> [A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.

Delaware v. Van Arsdall (1986), 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684. We have also stated:

> This Court must be able to state, in cases of error which we regard as harmless, that beyond a reasonable doubt the error did not affect the outcome of the trial.

State v. Daniels (1984), 210 Mont. 1, 12, 682 P.2d 173, 179, (citing Chapman v. California (1967), 386 U.S. 18, 26, 87 S.Ct. 824, 829, 17 L.Ed.2d 705, 711 (reh'g denied 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241)).

Although Mr. Custer's testimony as to the location where the offenses occurred was presented prior to the victim's testimony, it did not include any information that was not verified by the victim later during the course of the trial. We conclude that this did not prejudice Alexander and is harmless error according to Montana law as established by our prior cases.

Alexander's next hearsay argument concerns certain statements made by the victim's mother at trial when she attempted to state

what her son had told her about the sexual abuse and what a friend who was a counselor had said to her about sexual abuse. The transcript indicates that the victim's mother did indeed _attempt_ to make inappropriate statements; however, counsel for defendant objected immediately and the District Court sustained the objections. Consequently, there was no hearsay introduced through the victim's mother's testimony.

Moreover, the mother's attempt to introduce hearsay evidence did not result from the prosecutor's attempt to introduce such comments; rather, it was the witness who tried to do so. The District Court ruled that although some of the other testimony from the victim's mother may have involved some hearsay in her description of events leading up to filing charges against Alexander and obtaining counseling for her son for sexual abuse, that testimony was also foundational in nature and not substantive enough to be of such prejudice as to warrant granting Alexander's motion for a mistrial.

Alexander's final argument concerning hearsay relates to the testimony of the victim's counselor, Piersall. Piersall did not testify about anything the victim said to him. He testified about his diagnosis that the victim was suffering from post-traumatic stress and that such stress is consistent with certain experiences in a child's life, including sexual abuse. He testified as follows:

> Q. [By Ms. Wilson] Have you diagnosed [the victim]?
>
> A. [By Piersall] Yes, I have.

10

Q.   And can you tell me what that diagnosis is?

A.   Post-traumatic stress disorder.

Q.   And what symptoms did the child display that brought you to that decision?

A.   Well, [the victim's] tendency was to minimize his symptoms of distress as a coping device, because the more he would become aware of his distress, then the more distressed he would actually become.  So his tendency was to down-play them. Part of my making that diagnosis is based on information reported to me by the mother . . . .

MR. VERNAY:  Your Honor, we are in hearsay.

THE COURT:  Well, not yet.

THE WITNESS:  She reported--

MR. VERNAY:  We are in hearsay from [the mother].

THE COURT:  You are objecting?

MR. VERNAY:  Yes, I am.

THE COURT:  Sustained.

BY MS. WILSON:

Q.   Can you tell me what symptoms that you directly observed of [the victim] that would be consistent with your diagnosis?

A.   Well, it was approximately the third or fourth meeting that I had with [the victim] that I questioned him directly.

MR. VERNAY:  Objection, Your Honor, hearsay.

THE COURT:  Overruled.

THE WITNESS:   Where I questioned [the victim] directly about his allegations of sexual abuse by Paul Alexander toward him.  And as [the victim] was describing verbally to me things that he says took place--

THE COURT:  Wait a minute.  Stop.  This is hearsay. I am going to have to sustain the objection.  You can't testify as to [the victim]-- what he said to you or things that he has done that he-- manners other than

11

speech or in addition to speech, where he communicated to you. It is hearsay, and you are not allowed to--

THE WITNESS: Okay. I can say that he was very fearful as he relayed that information. That is something I observed directly.

BY MS. WILSON:

Q. Were there any other physical symptoms?

A. Well I asked him to do some drawings.

Q. I guess I don't really want to get into the nature of those.

A. All right.

Q. Doctor, is the diagnosis of post traumatic stress disorder consistent with children who have suffered sexual abuse?

A. Yes.

Q. Is it also consistent with other traumatic events that occur?

A. Yes.

Q. Can you give the jurors an example of some other things that might cause post traumatic stress?

A. Well, overwhelming experiences, such as being involved in a car accident and receiving significant injuries, having your house burn down, being physically abused. There are numerous traumatic events that could occur that could cause this type of symptom cluster.

Q. Have any of those type of occurrences been reported to you as occurring to [the victim]?

A. No, they haven't been reported to me. I am not aware of any? [sic]

Alexander contends that Piersall's testimony violates the holding of this Court in State v. Harris (1991), 247 Mont. 405, 808 P.2d 453. Harris dealt with statements about sexual abuse made to a counselor by a minor child who is the alleged victim of sexual

12

abuse for purposes of diagnosis under the medical treatment exception of Rule 803(4), M.R.Evid., and under the residual exception to the hearsay rule, Rule 804(b)(5), M.R.Evid. The Harris case also discussed a counselor's testimony relating to the credibility of the child victim. Harris, 808 P.2d at 455-59. Neither issue is appropriate here and Alexander has cited no other authority to support his argument. Here, there were no statements made by the victim which the State introduced through the counselor and the counselor did not testify as to the credibility of the victim.

Expert testimony is permissible to explain the existence of medical or psychological conditions associated with abuse. In State v. Scott (1993), 257 Mont. 454, 465, 850 P.2d 286, 292-93, we said:

> Expert testimony relating to the contradictory behavior . . . of a child victim of sexual abuse, will be allowed to enlighten the jury on a subject with which most people have no common experience and to assist the jurors in assessing the credibility of the victim.

We conclude the testimony given by Piersall in this case is the sort of testimony referred to in Scott which pertains to explaining the behavior of the victim and which is intended to assist the jurors in assessing the credibility of the victim. Scott also discussed the testimony of a counselor relating to the credibility of the child victim; this sort of testimony was not used in this case as Piersall did not testify as to the victim's credibility. His testimony was informative to the jurors on the nature of post traumatic stress disorder and did not impinge on the jury's

13

determination of credibility of the victim.

We hold the District Court erred by admitting the testimony of Brad Custer to establish where the offenses occurred and that such error was harmless. We further hold that none of the other testimony challenged by Alexander constituted improper hearsay testimony.

## Issue II.

Did the District Court err in refusing to continue the sentencing to allow the inclusion of a sex offender evaluation in the Pre-Sentence Investigation?

On June 28, 1992, the District Court ordered an evaluation by a psychologist "for purposes of ascertaining [Alexander's] amenability to treatment in an outpatient program." The evaluation was to be provided to the District Court as part of the presentence investigation. The court ordered that the sex offender evaluation be conducted by Northwest Family Recovery, licensed clinical psychologists. The court further ordered that copies of the evaluation be included in the presentence investigation pursuant to § 46-18-111, MCA. When that evaluation was not completed by the time scheduled for the sentencing hearing, the District Court refused to continue the hearing and sentenced the defendant without the benefit of the sex offender evaluation and recommendation.

During the sentencing hearing conducted on August 5, 1993, counsel for Alexander advised the court that Andy Hudak of Northwest Family Recovery was working on the evaluation but that it would not be completed for at least another month. He requested that the sentencing hearing be continued until the evaluation had

14

been completed and considered by the court. The prosecutor advised the court that she too had spoken with Hudak and that Hudak had told her that persons such as Alexander who maintain their innocence about the sexual behavior at issue are generally not amenable to treatment in his outpatient program. The District Court acknowledged its own familiarity with such programs, noted the continued denial of the defendant and denied the motion to continue the sentencing hearing.

Alexander contends that the District Court erred by refusing to continue the sentencing hearing and by sentencing him without considering Hudak's report. He argues that this violated the presentence investigation requirements set forth in § 46-18-111, MCA. Section 46-18-111, MCA (1991), applies to Alexander's sentencing and provides in pertinent part:

> **46-18-111. Presentence investigation -- when required.** (1) Upon . . . a verdict or finding of guilty to one or more felony offenses, the district court shall direct the probation officer to make a presentence investigation and report. . . . The investigation <u>must include an evaluation of the defendant and a recommendation as to treatment</u> by a person qualified under guidelines established by the department of corrections and human services. . . . (Emphasis supplied.)

Section 46-18-111(1), MCA, was amended by the 1993 Legislature and now specifically addresses perpetrators of sexual crimes involving victims under the age of sixteen years. The legislature amended subsection (1) to include a mandate for an evaluation and a recommendation as to treatment in the least restrictive environment in light of community safety and offender needs. Although Alexander argues that the amended statute is more applicable to

15

this case and should apply, that statute took effect on October 1, 1993, after Alexander's sentencing. However, the statute as previously written also requires an evaluation and recommendation as to treatment in this case.

Nonetheless, the State argues that because the District Court considered placement in a less restrictive environment than the Montana State Prison and recognized Alexander's rights to continue to claim his innocence, Alexander was not prejudiced by sentencing without the evaluation. The express wording of the 1991 statute, however, requires that the District Court "shall direct the probation officer to make a presentence evaluation and report" and that the "investigation must include an evaluation of the defendant and a recommendation as to treatment" by a qualified person.

Sentencing decisions made by a district court are generally discretionary as trial judges are granted broad discretion to determine the appropriate punishment. See, e.g., State v. Hembd (1992), 254 Mont. 407, 411, 838 P.2d 412, 415. However, the appropriate standard of review here as to this issue is whether the District Court's interpretation of the law is correct. State v. Strong (1993), 258 Mont. 48, 49, 851 P.2d 415, 416.

In this case, the District Court sentenced the defendant before the presentence investigation was completed. The trial court's discretion to determine the appropriate punishment in such a case cannot be exercised until and unless the statute concerning presentence investigations has been correctly applied. We conclude that the District Court did not have the discretion to sentence the

defendant in this case without considering a complete presentence investigation containing the evaluation and recommendation required by § 46-18-111(1), MCA.

After Alexander's sentencing, Hudak completed Alexander's Amenity Evaluation (for purposes of amenability for outpatient therapy) and the evaluation is now part of the record and can be included in the presentence investigation. Thus, on remand, the District Court will have a complete presentence investigation to consider in light of our decision in this case.

We hold the District Court erred in refusing to continue the sentencing in order to allow the inclusion of a sex offender evaluation in the Pre-Sentence Investigation.

Affirmed in part, reversed in part and remanded for resentencing consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

17

May 24, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Don Vernay
Attorney at Law
715 So. Main St.
Kalispell, MT  59901-5341

Hon. Joseph P. Mazurek
Attorney General
Justice Bldg.
Helena, MT  59620

Thomas Esch, County Attorney
Valerie D. Wilson, Deputy
P.O. Box 1516
Kalispell, MT  59903-1516

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy