No. 97-461

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 123

294 Mont. 436

983 P.2d 888

STATE OF MONTANA,

Plaintiff/Respondent,

v.

LARRY JOHN PIZZICHIELLO,

Defendant/Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Amy N. Guth, Libby, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana; Joseph E. Thaggard, Special Deputy Lincoln County Attorney, Helena, Montana

Submitted on Briefs: April 22, 1999

Decided: June 1, 1999

Filed:

_____

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. This is an appeal by the Defendant, Larry John Pizzichiello (Pizzichiello), from his conviction in the District Court for the Nineteenth Judicial District, Lincoln County of tampering with physical evidence, robbery (two counts) and deliberate homicide, all felonies. We reverse Pizzichiello's convictions and remand for further proceedings consistent with this opinion and for a new trial.**

## Background

**¶2. Because we are remanding for a new trial, our recitation of the facts and procedural background of this case will be limited to that necessary to address the dispositive legal issue.**

**¶3. The charges filed against Pizzichiello and of which he was ultimately convicted resulted from his alleged involvement in the death of Brian Carreiro (Carreiro), a Las Vegas, Nevada resident, who disappeared while on a hunting trip in Lincoln County, Montana in August 1995. An investigation into Carreiro's disappearance by Las Vegas authorities implicated Pizzichiello and John Lanny Lynch, both of whom accompanied Carreiro from Las Vegas to Montana on the hunting trip. After some four months of investigation by the Las Vegas Metropolitan Police, the case was handed over to Montana authorities for prosecution. Ultimately Pizzichiello and Lynch were charged with Carreiro's death, and the two were tried separately.**

**¶4. As part of the Nevada investigation, the Clark County (Nevada) District Attorney applied for and received judicial authorization from the county district court to intercept wire or oral communications made from the residence telephones of Lynch and Pizzichiello. As a result of these wiretaps, the Las Vegas investigators intercepted and recorded conversations between December 7, 1995, and January 11, 1996. The Nevada investigation was discontinued on January 9, 1996, once it was determined that Carreiro's death occurred in Montana. The Las Vegas police continued the**

electronic monitoring for sometime thereafter, however.

¶5. In his Montana prosecution, by a pretrial motion to suppress, Lynch objected to the State's use of this wiretap evidence and certain derivative evidence flowing therefrom. Without hearing, the trial court denied Lynch's motion to suppress. At his trial, the State offered the wiretap evidence and the testimony of Gary Knight and Tony Guarino-- testimony which Lynch contended was fruit of the wiretap evidence--against Lynch. Lynch was convicted. *State v. Lynch*, 1998 MT 308, ¶¶ 5-7 , ___ Mont. ___, ¶¶ 5-7, 969 P.2d 920, ¶¶ 5-7, 55 St.Rep. 1278, ¶¶ 5-7.

¶6. On appeal we reversed Lynch's conviction holding that the District Court erred as a matter of law in denying Lynch's motion to suppress the Nevada wiretap evidence and evidence flowing therefrom and in admitting such evidence at trial. As a consequence, we remanded Lynch's case for further proceedings consistent with our opinion and for a new trial. *Lynch*, ¶ 29.

¶7. In Pizzichiello's case, although he did move pretrial to suppress the wiretap evidence and testimony of Gary Knight and Tony Guarino, he concedes that his trial counsel did not object to the admission of the wiretap evidence upon the specific grounds which he now raises for the first time on appeal. Moreover, it is on the basis of one of these arguments-- i.e., that Montana evidentiary law applies to and prohibits the admission of the Nevada wiretap evidence in Montana court proceedings--that we reversed Lynch's conviction. *See Lynch*, ¶¶ 14-25. Notwithstanding his admitted failure to preserve this argument in the trial court, Pizzichiello, nonetheless, requests this Court to review the issue of the admission of wiretap evidence under the common law plain error doctrine and to reverse his convictions on the basis of our decision in *Lynch*.

## Issue

¶8. The sole issue which we address is whether we should review, for the first time on appeal, Pizzichiello's claim that the District Court erroneously admitted wiretap evidence in contravention of Montana law.

## Discussion

¶9. In *State v. Finley* (1996), 276 Mont. 126, 915 P.2d 208, we discussed at length the

common law plain error doctrine. Except in certain circumstances not at issue here, §§ 46-20-104(2) and 46-20-701, MCA, preclude appellate review of claimed errors not properly preserved in the trial court. Nonetheless, in *Finley* we determined that plain error review was inherent in the appellate process itself and correlative to this Court's power and paramount obligation to interpret the constitution and to protect the individual rights set forth therein. *Finley*, 276 Mont. at 134-135, 915 P.2d at 213. Specifically we held that

this Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.

*Finley*, 276 Mont. at 137, 915 P.2d at 215. In adopting this rule we also stated that we would "henceforth use our inherent power of common law plain error review sparingly, on a case-by-case basis, and [that we would] invoke that doctrine only in the class of cases aforementioned." Finley, 276 Mont. at 138, 915 P.2d at 215.

¶10. In arguing against our undertaking plain error review in the case *sub judice*, the State contends that, while we have been invited to invoke the doctrine on fourteen occasions since *Finley* was handed down, in only three of those cases did we conclude that there was a sufficient basis to warrant application of our inherent power of plain error review. In each of these three cases,[1] according to the State, a fundamental constitutional right was at stake and, arguably, failure to review would have resulted in a manifest miscarriage of justice, would have left unsettled the question of the fundamental fairness of the trial proceedings, or would have compromised the integrity of the judicial process. The State maintains that, here, Pizzichiello has failed to identify which of his constitutional rights are implicated by the District Court's admission of the wiretap evidence.

¶11. We agree with the State, that, to invoke our power of review under *Finley*, Pizzichiello must initially demonstrate that a fundamental right constitutionally guaranteed to him was implicated by the plain error which he claims. *Finley*, 236 Mont. at 137, 915 P.2d at 215. We disagree, however, with the State's contention that Pizzichiello failed in his burden to do so.

¶12. In the District Court, Pizzichiello moved pretrial to suppress all evidence of the communications electronically intercepted by the Nevada authorities as part of its investigation. In support of his motion Pizzichiello filed a lengthy brief, citing both federal and state authorities. In his motion and brief, Pizzichiello vigorously argued, among other things, that the Nevada wiretaps violated his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution; that any statements made by him or Lynch during the course of the wiretapped conversations were involuntary and therefore obtained in violation of Pizzichiello's Fifth and Fourteenth Amendment rights; that any statements made by him to Lieutenant Donald Bernall of the Lincoln County Sheriff's Department were made in violation of his Sixth Amendment right to counsel; and that evidence derivative of the wiretaps should also be suppressed under the "fruit of the poisonous tree" doctrine. The State objected to Pizzichiello's motion with its own lengthy brief citing authorities. Pizzichiello filed a reply brief countering the State's. Ultimately and on the basis of these briefs, the trial court entered a written decision denying Pizzichiello's motion except as to intercepted conversations between him and his counsel and as to his remarks to officer Bernall made after invoking his right to counsel.

¶13. In his opening brief on appeal, Pizzichiello argues the theories rejected by the trial court and, as noted above, he also raises for the first time various arguments made by Lynch in his motion to suppress--one of which proved successful in that case.

¶14. On this record, we cannot conclude, as the State maintains we should, that Pizzichiello has failed to demonstrate that a fundamental right constitutionally guaranteed to him was implicated by the plain error which he claims. To the contrary, Pizzichiello argued in the trial court and argues to this Court on appeal that the Nevada wiretaps implicated his right to counsel and his right to remain silent. Both of these are fundamental constitutional rights. *See Kimmelman v. Morrison* (1986), 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305: *Campbell v. Wood* (9th Cir. 1994), 18 F.3d 662, 671. And, regardless that we decline to reach the merits of these arguments for reasons hereinafter set forth, we are satisfied that Pizzichiello has at least demonstrated that the admission of the wiretap and derivative evidence "implicated" these rights. Accordingly, we conclude that Pizzichiello has met the first prong of the *Finley* test--that a fundamental right constitutionally guaranteed to him was implicated by the plain error which he claims. *Finley*, 236 Mont. at 137, 915 P.2d at 215.

**¶15. Next, Pizzichiello must show that our failing to review the claimed error at issue would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial proceedings or compromise the integrity of the judicial process.** *Finley*, **276 Mont. at 137, 915 P.2d at 215. In a typical case where plain error review is sought, we would analyze the merits of Pizzichiello's arguments that his rights to counsel and to be free from coerced self-incrimination under the federal constitution were violated by admission of the Nevada wiretap and derivative evidence. Under the unique procedural posture of this case, however, we determine that it is unnecessary that we take that approach, preferring to leave for a future case the resolution of the merits of these constitutional issues.**

**¶16. As previously noted, we determined in** *Lynch* **that the wiretap and derivative evidence at issue there--the same evidence used against Pizzichiello--was improperly admitted because of a Montana evidence exclusionary rule. Specifically, we stated that**

we acknowledge that the objective of the exclusionary rule is to punish illegal police conduct and that the efficacy of the rule may be attenuated when applied in Montana to evidence obtained in another jurisdiction by authorities over which Montana has no control. Nonetheless, we conclude that when viewed in the context of the evidentiary question which it is, Montana's paramount interest in affording defendants the fullest protection of Montana law when appearing in its courts and this State's clear prohibition against non-consensual electronic surveillance of oral and wire communications, must prevail. The rights and protections under Montana law enjoyed by persons accused of and prosecuted for crimes committed in this State would be significantly diminished if evidence, clearly inadmissible if obtained in Montana, could nevertheless be used against the defendant simply because it was fortuitously gathered in some other jurisdiction where Montana's evidentiary laws did not apply. The *character* of the evidence is what is fundamentally at issue, not where or how it was obtained. And, the *character* of the evidence is not changed simply because it was obtained in a different jurisdiction under different laws. Wiretap evidence is wiretap evidence, and, under Montana law, the use of such evidence in Montana courts is not permissible.

*Lynch, ¶ 25.*

**¶17. Given this basis on which we reversed Lynch's convictions, it cannot be logically**

argued that justice, fundamental fairness or judicial integrity would be served by allowing the State to convict Pizzichiello for the same crimes arising out of the same transaction with precisely the same evidence which we ruled was inadmissible in the trial of his co-defendant. Quite to the contrary, such a decision would deprive Pizzichiello of "the fullest protection of Montana law when appearing in its courts," frustrate "this State's clear prohibition against non-consensual electronic surveillance of oral and wire communications," significantly diminish the "rights and protections under Montana law enjoyed by persons accused of and prosecuted for crimes committed in this State," *Lynch,* ¶ 25, and exalt form over substance, § 1-3-219, MCA. In short, allowing clearly inadmissible wiretap evidence to be used against Pizzichiello would violate all of the remaining three *Finley* criteria.

¶18. We hold that plain error review is appropriate under the particular facts and under the unique procedural posture of this case and that our decision in *Lynch* controls the resolution of the admissibility of the wiretap evidence objected to by Pizzichiello. Specifically, we hold that the District Court erred as a matter of law in admitting the wiretap and derivative[2] evidence at Pizzichiello's trial. As a consequence, Pizzichiello's convictions must be reversed and this cause remanded for further proceedings consistent with this opinion and for a new trial.

¶19. Finally, we note that in his opening brief on appeal, Pizzichiello has raised various issues which we have not addressed in this opinion because of a prior agreement between Pizzichiello's then appellate counsel and the State. *See* this Court's order dated January 21, 1999. However, in our March 16, 1999 order ruling on a motion filed by Pizzichiello, we did address the procedural disposition of all of the issues which Pizzichiello has raised on appeal in the event that we reversed his convictions and remanded for new trial. Because our decision here does precisely that, our March 16, 1999 order will control on remand.

¶20. Reversed and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART


Justice Karla M. Gray, specially concurring.


¶21 I join in the Court's opinion.

¶22 I write separately to clarify that the concerns I have expressed on previous occasions (*see, e.g., Finley*, 276 Mont. at 148-50, 915 P.2d at 222-23 (Gray, J., specially concurring)) about the Court's use of the common law plain error doctrine have not lessened with the passage of time. Indeed, if anything, those concerns have grown. The Court having adopted the doctrine, however, the common law plain error doctrine is now the law in Montana and, like all Montanans, I am bound by it.

/S/ KARLA M. GRAY


Justice Terry N. Trieweiler specially concurring.

**¶21. I concur with the majority's decision to reverse the conviction of Larry John Pizzichiello and remand to the District Court for further proceedings.**

**¶22. I furthermore concur that in light of the reversal of John Lanny Lynch's**

**conviction based on the district court's failure to suppress Nevada wiretap evidence, and the admission of that same evidence in this case in spite of Pizzichiello's pretrial motion to suppress, the integrity of the judicial process would be compromised by ignoring the same issue based simply on the form of Pizzichiello's objection. However, I do not agree with all that is said as part of the majority's plain error analysis. Specifically, I do not agree that raising a fundamental right in the district court has any bearing on plain error analysis when our decision is made on some basis other than the fundamental right claimed. However, under the circumstances unique to this case, I would conclude that to hold other than we have would cause a miscarriage of justice, compromise the integrity of the judicial process, and on that basis alone plain error should be invoked..**

**¶23. Therefore, I specially concur with the majority opinion.**

/S/ TERRY N. TRIEWEILER

1. [1]*State v. Sullivan* (1996), 280 Mont. 25, 927 P.2d 1033 (claim of *Doyle* error); *State v. Dahlin*, 1998 MT 113, 289 Mont. 182, 961 P.2d 1247 (form of consent necessary to waive jury trial); *State v. Weaver*, 1998 MT 167, ___Mont. ___, 964 P.2d 713, 55 St.Rep. 668 (necessity for unanimity instruction as affecting criminal jury verdict).

2. [2] As in *Lynch* we make no attempt to define the scope of evidence in this case that may have flowed from the wiretap evidence. We conclude that determining what evidence is derivative of the wiretaps and, therefore suppressible, is best left to the trial court on remand following further proceedings on this question.