No. 02-344

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 26

STATE OF MONTANA,

   Plaintiff and Respondent,

   v.

CHARLES LEGG,

   Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                In and For the County of Carbon, Cause No. DC 01-03,
                Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Raymond G. Kuntz, Attorney at Law, Red Lodge, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Cregg W. Coughlin,
        Assistant Attorney General, Helena, Montana

        A.W. Kendall, County Attorney, Red Lodge, Montana

                        Submitted on Briefs:  November 21, 2002

                        Decided:  February 5, 2004

Filed:

        _____
                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     The defendant, Charles Legg (Legg), appeals from the sentence imposed by the Montana Twenty-Second Judicial District Court, Carbon County, following his plea of guilty to the offense of sexual assault, a felony in violation of § 45-5-502, MCA (2001).  We affirm.

¶2     Legg raises numerous issues on appeal, which we restate as follows:

¶3     1. Did the District Court err in failing to exclude evidence contained in the presentence investigation report?

¶4     2. Did the District Court adequately state its reasons for Legg's sentence in its oral pronouncement of sentence?

¶5     3. Did the District Court adequately state its reasons for Legg's sentence in its written judgment?

¶6     4. Did the District Court adequately consider the presentence investigation report's recommendations for the least restrictive environment at sentencing?

¶7     5. Did the District Court err in not applying the exceptions to the mandatory minimum sentence?

¶8     6. Does Legg's fifty-year sentence violate statutory sentencing policy?

¶9     7. Did the District Court err in failing to designate an offender level?

¶10     8. Did the District Court violate Legg's substantive due process rights in sentencing him to fifty years in State prison?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶11 On February 5, 2001, R.G. reported to the Carbon County Sheriff's Department that his nine-year-old daughter, N.J.G., had been sexually assaulted by Charles Legg. The following day, Carbon County Undersheriff Bob Reed (Reed) conducted a videotaped interview of N.J.G., who reported that Legg had been sexually assaulting her since June 2000. N.J.G. disclosed to Reed that the assaults occurred on the ranch where Legg and she and her family lived and worked. According to N.J.G., Legg took her to places where they were alone, including her house, the shop, barn, cookhouse, and a friend's house. There, Legg touched her "private parts," which she identified as her buttocks, breasts, and vaginal area. N.J.G. additionally reported that Legg kissed her mouth, put his hands under her clothing, and rubbed her breasts and buttocks.

¶12 On February 9, 2001, Deputy Sheriff Hanly Loyning interviewed Legg concerning the allegations of sexual assault. Legg confessed that he had, on approximately twenty different occasions, touched the sexual or other intimate parts of N.J.G. for the purpose of arousing his or her sexual response or desire. Legg was subsequently arrested and charged with sexual assault, a felony, in violation of § 45-5-502, MCA.

¶13 After receiving appointed defense counsel, Legg was arraigned and pleaded not guilty to the charge of sexual assault. At the request of his defense counsel, the District Court ordered an examination of Legg's mental condition, pursuant to § 46-14-202, MCA.

¶14 Pursuant to the court's order, Dee Woolston, Ph.D. (Dr. Woolston), a licensed clinical psychologist, performed a forensic psychological examination of Legg on June 8, 2001. Dr.

Woolston diagnosed Legg as suffering from a serious depressive disorder, which he judged was severe enough to significantly interfere with Legg's social and occupational functioning and caused him to suffer suicidal tendencies. Despite this, however, Dr. Woolston concluded Legg was intellectually competent, understood the nature of the criminal charge against him, and appreciated the possible consequences of incarceration.

¶15 Shortly thereafter, at the request of Legg's counsel, Michael D. Sullivan, M.S.W. (Sullivan), Director of South Central Treatment Associates, performed a psychosexual evaluation of Legg. Using a number of assessment scales, including the Sex Offender Risk Appraisal Guide, the Static 99, and the Screening Scale for Pedophilic Interests, Sullivan categorized Legg as a low risk, or Level I, sexual offender and suggested that a community-based placement and out-patient sexual offender treatment would be appropriate.

¶16 On November 5, 2001, Legg entered a plea bargain agreement with the State whereby he agreed to plead guilty to the sexual assault charge. In exchange, the State agreed to recommend sentencing in accordance with that suggested by the psychological and psychosexual evaluations. Legg acknowledged in the agreement that such a recommendation might range from a lengthy suspended sentence to incarceration.

¶17 That same date, in accordance with the plea bargain agreement, Legg appeared before the District Court and changed his plea to guilty. After due inquiry, the court accepted Legg's guilty plea, ordered the preparation of a presentence investigation report (PSI), and scheduled the matter for sentencing.

4

¶18    Probation and Parole Officer Deborah Willis (Willis) was assigned the task of preparing the PSI. During the course of her investigation, Willis received numerous letters, both from the victim and her family, as well as from individuals who were either familiar with the victim and her family, or with Charles Legg. Many of the letters reported their observations of Legg around children and young adults. Others spoke about being secondary victims of Legg's sexual abuse. Willis additionally learned that Legg's ex-wife had been awarded exclusive care and custody of the parties' minor children during their divorce, which had been entered by default judgment in a Tennessee district court in 1998. Pursuant to the court decree, Legg was prohibited from visiting his children and was permanently restricted from the residence of his ex-wife or her workplace. Willis included this information within the PSI and additionally forwarded it to Michael Sullivan for his review.

¶19    On January 7, 2002, Sullivan submitted an addendum to his earlier psychosexual evaluation of Legg, reclassifying Legg as a Level II, or moderate risk offender. Based upon his review of the additional information provided by Willis, Sullivan concluded that Legg had not been "entirely candid in regards to his self-reports at the time of evaluation." In particular, Legg had misrepresented his relationship with his children during the initial evaluation by leading Sullivan to believe that he had a normal, ongoing relationship with his children, and failing to disclose that the divorce decree had severed the relationship. It also appeared that there were additional victims of Legg's sexual abuse, including Legg's own children and ex-wife. Finally, Sullivan noted that Legg was consistently described by others "as a rather dishonest, manipulative, and irresponsible individual who tends to prey on

5

vulnerable people. He [was] also described as a man who tends to feign depression and suicidal ideation as a way to either gain sympathy or avoid responsibility for his behavior." In light of this information, Sullivan concluded that Legg likely presented too great a risk to the community to be placed in a community-based setting and treated as an out-patient sexual offender, and suggested that treatment within a penitentiary would be appropriate. As a minimum level of confinement, Sullivan recommended treatment within a pre-release center.

¶20 On February 4, 2002, Willis filed the completed PSI with the District Court. In addition to the psychological evaluation performed by Dr. Woolston and the psychosexual evaluation and addendum prepared by Sullivan, the PSI included the letters and statements which had been submitted to Willis during her investigation, as well as the court decree dissolving Legg's marriage. After considering Legg's social and criminal history, the nature of his offense, and relevant statutes, Willis recommended that Legg be sentenced to a term of commitment with the Department of Corrections, and left suspension of any part of that term to the discretion of the District Court.

¶21 In response to the PSI, Legg filed a Motion in Limine and Sentencing Memorandum requesting the District Court to "exclude from evidence all portions of the Presentence Investigation and Report based on letters or statements from persons other than [N.J.G.], her family, or her therapists." Legg also asked the court to take note of the mitigating factors set forth at § 46-18-222(2), MCA, as well as to recognize the public policy that sentences

6

should be commensurate with the punishment imposed on other persons committing the same offense.

¶22 A sentencing hearing was held on February 4, 2002. Legg's motion to exclude the letters and statements contained in the PSI was not ruled upon by the District Court, and thus, the challenged evidence was not excluded. The State recommended a thirty-year term of commitment at the Montana State Prison, with twenty-five years suspended, and Legg consented to the State's recommendation. After hearing testimony from the victim's father, physician, counselor, and Michael Sullivan, the District Court sentenced Legg to a fifty-year term in State prison, with no part of the sentence suspended. From this judgment, Legg appeals.

¶23 On March 6, 2002, Legg applied for sentence review before the Sentence Review Division of the Montana Supreme Court. Such review has been stayed pending the outcome of this appeal.

## STANDARD OF REVIEW

¶24 This Court reviews a criminal sentence for legality only. Thus, our review is confined to whether the sentence is within the parameters provided by statute. *State v. Scarborough,* 2000 MT 301, ¶ 90, 302 Mont. 350, ¶ 90, 14 P.3d 1202, ¶ 90. When the issue on appeal concerns whether the district court violated the defendant's constitutional rights at sentencing, the question is a matter of law which we review *de novo* to determine whether the district court's interpretation of the law is correct. *State v. Bedwell*, 1999 MT 206, ¶ 4,

7

295 Mont. 476, ¶ 4, 985 P.2d 150, ¶ 4; *State v. Guillaume*, 1999 MT 29, ¶ 7, 293 Mont. 224, ¶ 7, 975 P.2d 312, ¶ 7.

DISCUSSION

¶25   **1.  Did the District Court err in failing to exclude evidence contained in the presentence investigation report?**

¶26   Legg concedes that § 46-18-115(4)(a), MCA, allows the victim to provide the court with a statement concerning the effects of the crime on the victim, the circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion regarding appropriate sentence.  Legg argues, however, that the District Court exceeded its statutory authority in considering statements from individuals other than N.J.G., her family, and therapists in imposing sentence.  The State responds by citing § 46-18-115(4)(c), MCA, which commands the court to "consider the victim's statement *along with other factors*."  (Emphasis added.)

¶27   When interpreting statutes, this Court's only function is to give effect to the intent of the Legislature.  *State v. Hamilton*, 2002 MT 263, ¶ 14, 312 Mont. 249, ¶ 14, 59 P.3d 387, ¶ 14. While legislative intent must first be determined from the plain meaning of the words in the statute, when the plain meaning of a statute is subject to more than one reasonable interpretation, as it is here, we will examine the legislative history to aid our interpretation. *Hamilton,* ¶ 14.

¶28   In 1995, § 46-18-115, MCA, was amended to include subsection 4, which, as stated above, requires the sentencing court to permit the victim to present a statement concerning the effects of the crime on the victim and to give an opinion regarding appropriate sentence. Additionally, subsection 4(c) was added, which commands the court to "consider the victim's statement along with other factors.  However, if the victim's statement includes new

9

material facts upon which the court intends to rely, the court shall allow the defendant adequate opportunity to respond and may continue the sentencing hearing if necessary."

¶29    As advocated in hearings before the House and Senate Judiciary Committees during the 1995 legislative session, one of the primary purposes of the bill amending § 46-18-115, MCA, was to require consideration of the victim's interest by the courts and parole board at the critical stages of the proceedings.  In particular, Representative Marjorie Fisher, sponsor of the legislation, informed the Senate Judiciary Committee that:

> [H.B. 69] requires consideration of the protection of the victim by the courts when imposing restrictions on the offender and by the court before allowing a sex offender who assaulted a child to be treated in a community setting.

Mont. S. Jud. Comm., *Hearing on H.B. 69*, 54th Leg., Reg. Sess. 1 (Mar. 1, 1995).

¶30    Given the Legislature's concern with protecting victims from repeat offenses and the treatment of child sexual offenders within a community setting, we believe the Legislature intended to allow the sentencing court wide latitude in considering any information relevant to the treatment of the offender and the risk he or she poses to the victim or to other children in a community.

¶31    Further, when the defendant has been convicted of a sex offense, as Legg has, the presentence investigation must include a psychosexual evaluation of the defendant and a recommendation as to treatment of the offender in the least restrictive environment, considering *the risk the offender presents to the community*.  Section 46-18-111(1), MCA. We also note that under § 46-18-112(1)(e), MCA, the probation officer preparing the PSI

10

must inquire into and report upon such things as "the harm caused, as a result of the offense, to the victim, the victim's immediate family, *and the community*." (Emphasis added.)

¶32 Here, Sullivan's consideration of the statements submitted to Probation Officer Willis as well as the divorce decree terminating Legg's marriage was in keeping with the statutory mandate of § 46-18-111(1), MCA. While Sullivan reclassified Legg's risk designation after considering this additional information, Sullivan testified at sentencing that he reconsidered Legg's risk level only after it became apparent that Legg had not been "entirely candid" with him during the initial evaluation. In particular, Sullivan noted that Legg's relationship with his children had been severed pursuant to a divorce decree, which was contrary to Legg's initial report to Sullivan, and that Legg was prohibited from being around his ex-wife and children. It was also apparent to Sullivan that there may be additional victims of Legg's sexual abuse, including his own children, and that Legg was consistently described by others as "manipulative" and "dishonest." In light of this information, Sullivan concluded that Legg posed a greater risk to the community than previously assessed and recommended placement at a pre-release center as the minimum level of structure and supervision necessary for treatment.

¶33 As it was required to do by statute, the District Court considered the contents of the PSI and the recommendations contained therein. *See* § 46-18-111(1), MCA. This notwithstanding, it is unclear from the record what specific consideration the District Court gave to the statements submitted to Willis. Rather, the record shows only that the court was greatly concerned with the risk Legg posed to the community, particularly minor girls,

11

should he receive the minimum level of treatment. Although the court based its determination of Legg's risk to the community largely upon the testimony of Michael Sullivan, who considered the statements and divorce decree in calculating Legg's risk status, such consideration was in keeping with the purpose of § 46-18-115(4), MCA, which requires the court to recognize the importance of protecting the victim, as well as § 46-18-111(1), MCA, which requires consideration of the risk the offender presents to the community. In light of these statutory imperatives, we hold the District Court did not exceed its statutory authority by disregarding Legg's motion in limine to exclude from the PSI letters and statements from individuals other than N.J.G.

¶34 **2. Did the District Court adequately state its reasons for Legg's sentence in its oral pronouncement of sentence?**

¶35 Legg contends that the reasons stated in the District Court's oral pronouncement of sentence were insufficient as a matter of law and urges this Court to remand for resentencing. We disagree.

¶36 Section 46-18-115(6), MCA, provides that, "in felony cases, the court shall specifically state all reasons for the sentence . . . in open court on the record and in the written judgment." Nonetheless, we have not required a district court to give an extensive statement of its sentencing reasons. *State v. St. John*, 2001 MT 1, ¶ 27, 304 Mont. 47, ¶ 27, 15 P.3d 970, ¶ 27, *overruled on other grounds by State v. Brister*, 2002 MT 13, 308 Mont. 154, 41 P.3d 314; *see also State v. Osterloth*, 2000 MT 129, ¶¶ 39-40, 299 Mont. 517, ¶¶ 39-40, 1 P.3d 946, ¶¶ 39-40 (holding that sentencing court's oral pronouncement that defendant's participation in intensive outpatient sex offender treatment program "didn't work

out" and that the court "cannot accept the risk to the other children in this community" met the requirements under § 46-18-115(6), MCA).

¶37 Here, after rendering judgment against Legg, the District Court stated in open court the following reasons for its sentence:

> Mr. Legg, I don't want to have another family come before me and say that their child had to experience what [N.J.G.] has experienced. Therefore, I've given you a 50-year prison term, such that you will be under supervision until you're 91 years of age. So even if you are 71, I pray that it would not occur. There will be under the laws of Montana some eligibility for parole, but it will be a long time before that eligibility kicks in, Mr. Legg.

> The reason for that, quite frankly, is that the law allows the Court to impose sentences for the purposes of punishment. We should not allow in this society people to abuse and injure children without extreme consequences.

> . . . .

> Therefore, this sentence is passed for the reason that I believe society needs to be protected from Mr. Legg. The injury visited upon the child needs to be addressed appropriately by the Court. And the psychological and sexual counseling and criminal thinking counseling can be adequately addressed at the Montana State Penitentiary.

Thus, as reflected on the record, the District Court imposed a fifty-year sentence on Legg both to punish Legg for his crime, as well as to protect society from Legg in the future.

¶38 Additionally, the court had questioned Michael Sullivan concerning the duration of Legg's required treatment. Sullivan had testified that Legg would always need some sort of structure to maintain a non-offending status. Thus, the court reasoned that incarceration presented the most appropriate course for providing the counseling, treatment, and supervision Legg required. On this record, we hold the District Court's stated reasons for Legg's fifty-year sentence satisfy the requirements of § 46-18-115(6), MCA.

13

**¶39   3.  Did the District Court adequately state its reasons for Legg's sentence in its written judgment?**

¶40    As in the previous issue, Legg argues that the District Court's statement of reasons for sentence in its written judgment was inadequate under § 46-18-115(6), MCA.  The State counters, however, that Legg has waived this issue on appeal.  We agree with the State.

¶41    The sentence orally pronounced from the bench in the presence of the defendant is the legally effective sentence and valid, final judgment.  *Osterloth*, ¶ 40; *see also State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, ¶ 40, 957 P.2d 9, ¶ 40.  When there is a conflict between the oral pronouncement of sentence and the written judgment, § 46-18-116(2), MCA, permits the defendant to request the sentencing court to "modify the written judgment to conform to the oral pronouncement" of sentence.  However, the defendant "waive[s] the right to request modification of the written judgment if a request for modification of the written judgment is not filed within 120 days after the filing of the written judgment of the sentencing court."

¶42    Here, after receiving the written judgment, Legg moved to amend or correct the judgment to include a designation of his offender status and consideration of mitigating factors.  Although Legg made his motion pursuant to § 46-18-116, MCA, Legg failed to establish, or even discuss, the existence of a conflict between the oral pronouncement of sentence and the written judgment.  Thereafter, Legg made no motion to conform the written judgment to the oral pronouncement of sentence.  Because the prescribed time period for doing so has now elapsed, Legg has waived his right to request modification of the written judgment.  His request for remand and resentencing on this issue is therefore denied.

**¶43    4.  Did the District Court adequately consider the presentence investigation report's recommendations for the least restrictive environment at sentencing?**

¶44    Legg argues that the District Court erred by failing to consider Sullivan's recommendations for the least restrictive environment at sentencing.  Legg notes that, in *State v. Alexander* (1994), 265 Mont. 192, 203, 875 P.2d 345, 352, we held that a district court must consider a completed PSI prior to sentencing a defendant.  Based upon our holding in *Alexander*, Legg argues that the District Court must review and analyze each of the PSI's recommendations for sentence, so that a defendant may receive treatment in the "least restrictive environment."  Legg concludes that since neither the oral pronouncement of sentence nor the written judgment contained any analysis or consideration of Sullivan's recommendation, the District Court failed to consider such recommendations and, thus, erred in rendering sentence.

¶45    As Legg correctly points out, § 46-18-111(1), MCA, requires the PSI to include a psychosexual evaluation of the defendant when the defendant has been convicted of sexual assault.  According to § 46-18-111(1), MCA, the evaluation must be completed by a qualified sexual offender therapist and must include a recommendation as to treatment of the defendant in the least restrictive environment, considering the risk the defendant presents to the community.

¶46    In this case, Michael Sullivan, a qualified sexual therapist, completed the psychosexual evaluation of Legg.  While it is true the District Court did not explicitly state that it had considered Sullivan's recommendations at sentencing, Legg provides no authority requiring the court to "itemize each piece of evidence presented and either accept or reject

15

it." *See State v. Gordon*, 1999 MT 169, ¶ 49, 295 Mont. 183, ¶ 49, 983 P.2d 377, ¶ 49. Furthermore, from the record, it appears the District Court did consider Sullivan's recommendations for sentencing. At the sentencing hearing, the District Court questioned Michael Sullivan at length concerning possible treatment of Legg at a community or prison setting, and inquired about Legg's prognosis for success in both. Additionally, the PSI bears the court's handwritten notes and highlighted marks, which, while not conclusive evidence, suggest the court considered the PSI before sentencing the defendant. Finally, the District Court stated in its written judgment that it had "considered the Pre-Sentence Investigation, the psychosexual evaluation, the testimony of Michael Sullivan and the recommendation of the County Attorney and of the defendant's attorney" in imposing sentence. From this record, we hold the District Court adequately considered the PSI's recommendations for the least restrictive environment at sentencing, and, therefore, affirm the District Court on this issue.

¶47 **5. Did the District Court err in not applying the exceptions to the mandatory minimum sentence?**

¶48 Legg argues that, pursuant to § 46-18-222(2), MCA, the District Court should have considered Dr. Woolston's evaluation in imposing sentence. Section 46-18-222(2), MCA, provides that a district court may sentence a criminal defendant to less than the statutory mandatory minimum sentence when "the offender's mental capacity, at the time of the commission of the offense for which the offender is to be sentenced, was significantly impaired, although not so impaired as to constitute a defense to the prosecution."

16

¶49 However, we have consistently held that the exceptions set forth at § 46-18-222, MCA, do not apply in cases in which the district court sentences the offender to more than the minimum sentence. *State v. Zabawa* (1996), 279 Mont. 307, 317, 928 P.2d 151, 157, *followed in State v. Keith*, 2000 MT 23, ¶ 23, 298 Mont. 165, ¶ 23, 995 P.2d 966, ¶ 23. *See also State v. Graveley* (1996), 275 Mont. 519, 524, 915 P.2d 184, 188, *overruled on other grounds by State v. Lane*, 1998 MT 76, ¶ 41, 288 Mont. 286, ¶ 41, 957 P.2d 9, ¶ 41; *State v. Nichols* (1986), 222 Mont. 71, 82, 720 P.2d 1157, 1164; and *State v. DeSalvo* (1995), 273 Mont. 343, 348, 903 P.2d 202, 205. Furthermore, there is no requirement that the District Court make findings on why it did not apply the exceptions. *Zabawa*, 279 Mont. at 317, 928 P.2d at 158.

¶50 Here, Legg conceded before the District Court at sentencing that the mitigating factors set forth at § 46-18-222, MCA, did not apply as he had agreed to the State's recommended sentence of thirty years, which exceeded the mandatory minimum sentence for his sexual assault of a victim under sixteen years of age. *See* § 45-5-502(3), MCA. Accordingly, we need not address the merits of Legg's argument because the exceptions found at § 46-18-222, MCA, do not apply.

¶51 **6. Does Legg's fifty-year sentence violate statutory sentencing policy?**

¶52 Legg claims that his fifty-year sentence, which is one-half the maximum allowed under law, violates public policy that sentences should be commensurate with the punishment imposed on other persons committing the same offense. Section 46-18-101(3)(b), MCA.

17

¶53    The State responds, and we agree, that this is an issue concerning the equity of Legg's sentence, which properly lies with the Sentence Review Division. This Court does not review a sentence on appeal for mere inequity or disparity. *DeSalvo*, 273 Mont. at 350, 903 P.2d at 207. Rather, "the proper channel for a challenge to the equity of a sentence as opposed to its legality is through the Sentence Review Division." *DeSalvo*, 273 Mont. at 350, 903 P.2d at 207. Accordingly, we hold that further review of Legg's sentence for any alleged inequity properly lies with the Sentence Review Division.

¶54    **7. Did the District Court err in failing to designate an offender level?**

¶55    Legg correctly argues that § 46-23-509(3), MCA, commands the District Court to designate the sexual offender's risk level at the time of sentencing. However, the statute further provides that "if, at the time of sentencing, the sentencing judge did not apply a level designation to a sexual offender who is required to register under this part, the department shall designate the offender as level 1, 2, or 3 when the offender is released from confinement." Section 46-23-509(5), MCA.

¶56    Here, the District Court failed to designate Legg's risk level, despite the fact that Legg brought this omission to the court's attention by motion. To this extent, we conclude the District Court erred. However, our conclusion does not require this case to be remanded for resentencing because the statute contemplates that the Department of Corrections may designate an offender level at the time of the offender's release from confinement, if the district court has failed to do so. Section 46-23-509(5), MCA. In other words, the statute

18

provides its own remedy. Because the sentence imposed on Legg did not result in prejudice, we hold the District Court's failure to designate Legg's offender level was harmless error.

¶57 **8. Did the District Court violate Legg's substantive due process rights in sentencing him to fifty-years in State prison?**

¶58 Legg challenges his fifty-year sentence as a violation of substantive due process, arguing that the District Court acted arbitrarily in imposing sentence because it failed to consider the mitigating factors referenced in Dr. Woolston's psychological evaluation, or make a finding of aggravating circumstances. Although Legg did not challenge his sentence on this basis in District Court, he urges this Court to nonetheless review his claim under the common law "plain error" doctrine. The State responds by arguing that the plain error exception does not apply in this case as plain error review is reserved for exceptional cases in which the claimed errors implicate a criminal defendant's fundamental constitutional rights. In this case, the State argues, Legg has not demonstrated that his constitutional rights were violated by the District Court's alleged error.

¶59 We agree with the State that the plain error exception does not apply in this case. In order to invoke our power of common law plain error review, the criminal defendant must "initially demonstrate that a fundamental right constitutionally guaranteed to him was implicated by the plain error which he now claims." *State v. Hart*, 2000 MT 332, ¶ 49, 303 Mont. 71, ¶ 49, 15 P.3d 917, ¶ 49 (quoting *State v. Pizzichiello*, 1999 MT 123, ¶ 11, 294 Mont. 436, ¶ 11, 983 P.2d 888, ¶ 11). Although Legg claims his constitutional right to due process was implicated by the District Court's failure to consider the mitigating factors set forth in Dr. Woolston's evaluation or enter findings of aggravating circumstances, Legg has

19

failed to demonstrate how such inaction amounted to any error, much less fundamental unfairness amounting to plain error. Nor does a review of the record convince us that neglecting to review Legg's claimed error will result in a manifest miscarriage of justice, leave unsettled the question of fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *State v. Daniels*, 2003 MT 247, ¶ 20, 317 Mont. 331, ¶ 20, 77 P.3d 224, ¶ 20; *State v. Brown*, 1999 MT 31, ¶ 9, 293 Mont. 268, ¶ 9, 975 P.2d 321, ¶ 9 (citing *State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215). Because we will not "set a precedent of presenting full analysis whenever a party asserts that an issue not properly preserved for appeal constitutes plain error," *Daniels*, ¶ 28, and Legg does not meet the narrow criteria required to invoke our discretionary plain error review, we decline to address the merits of Legg's argument under plain error review.

¶60 However, under our holding in *State v. Lenihan* (1979), 184 Mont. 338, 602 P.2d 997, we may review a sentence that is alleged to be illegal or exceeding statutory limits, even if no objection was made at the time of sentencing. *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000. While Legg has failed to meet the requirements for plain error review, he has challenged the legal validity of his sentence by alleging that it was issued without regard to the mitigating factors identified in Dr. Woolston's evaluation, thus violating his due process rights in the Fourteenth Amendment of the United States Constitution and Article II, Section 17, of the Montana Constitution. Such a claim is reviewable on appeal. However, in this case, Legg has failed to cite any authority in support of his argument or otherwise demonstrate how the District Court's alleged actions or inactions violated his constitutional

rights. We have repeatedly stated that we will not consider arguments on appeal that are unsupported by authority. *State v. Peterson*, 2002 MT 65, ¶ 24, 309 Mont. 199, ¶ 24, 44 P.3d 499, ¶ 24 (citing *State ex. rel. Booth v. Mont. Twenty-First Jud. Dist.*, 1998 MT 344, ¶ 35, 292 Mont. 371, ¶ 35, 972 P.2d 325, ¶ 35).

¶61 Rather, after an extensive review of Legg's argument concerning this issue, we conclude that Legg has cloaked an equitable challenge of his sentence in the vestiges of a constitutional argument. Essentially, Legg contends that the fifty-year sentence imposed upon him so exceeds the recommendations in the PSI and the recommendations made by counsel as to be fundamentally unfair. Given the lack of authority, this is an argument concerning the equity of Legg's sentence, not its legality. As we have already stated, issues of equity are matters which are proper for the Sentence Review Division, and are not considered on appeal by this Court. Accordingly, we decline to address the merits of Legg's argument.

¶62 Affirmed.


/S/ JIM RICE



We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER

Justice W. William Leaphart specially concurring.

¶63     I concur in the opinion with the caveat that the statement in ¶ 30 that a sentencing court has latitude to consider "any information relevant to the treatment of the offender" is subject to the concerns I expressed in my dissent in *State v. Mason,* 2003 MT 371, 319 Mont. 117, ___ P.3d ___.

/S/ W. WILLIAM LEAPHART